David MUNNERLYN *v.* STATE of Arkansas

CR 78-138                                    576 S.W. 2d 714

Opinion delivered January 29, 1979
(Division II)
[Rehearing denied March 5, 1979.]

*Jeff Duty,* for appellant.

*Bill Clinton,* Atty. Gen., by: *Catherine Anderson,* Asst. Atty. Gen., for appellee.

JOHN A. FOGLEMAN, Justice. Appellant was found guilty of the sale of methamphetamines, a controlled substance, on October 27, 1977, sentenced to ten years imprisonment and fined $10,000. Appellant appeals from his conviction, alleging four points for reversal.

Points I and II of appellant's brief both deal with alleged irregulariries in the chain of custody of evidence introduced at the appellant's trial in two different samples, and we shall discuss them together.

Methamphetamines were introduced into evidence from two sales allegedly made by the appellant, occurring on October 14, 1977 and October 27, 1977. The testimony which furnished the foundation for the introduction of these exhibits was substantially as follows:

Both purchases from the appellant were made by Jimmy Stevens, with money provided specifically for that purpose by Benton County Deputy Sheriff Don Rystrom. Stevens and Rystrom testified that the pills bought on October 14th were delivered in person by Stevens to Rystrom on the same day they were bought. They were in a plastic bag when Rystrom received them. After the pills were bought on October 27th (the sale for which appellant was convicted), Stevens placed a plastic bag containing them in the mailbox outside the Stevens residence and called Rystrom to tell him the pills were in the mailbox. Rystrom retrieved the pills from the mailbox while Stevens watched.

Rystrom followed the same procedure with both parcels. He attached a Benton County Sheriff's Department evidence tag which contained a description of the enclosed pills and a case number (R 77-411); each parcel was then sealed in an envelope and mailed to the Drug Laboratory of the Arkansas Department of Health, via certified mail.

Two different chemists employed by the department of health analyzed the pills. One of them, Gary Dallas, testified that the sample he analyzed was taken from a package received in the laboratory on October 20, 1977, by certified mail, bearing the same number given it by Rystrom. The envelope was introduced as Exhibit 1. Exhibit 2 was a plastic bag containing 96 white tablets to which was attached a card on which the words "Benton County Sheriff's Department" and "Case No. R 77-411" had been written by someone in the sheriff's office. Gene Bang, the other chemist, gave similar testimony as to the other sample. It was received on November 9th, 1977. Both testified as to the procedure which is followed when samples from law enforcement agencies are received for testing. The evidence technician, actually a chemist assigned to receive samples, signs the certified mail receipt, notes his or her initials on the package and assigns each package a "lab number," which is written on the package. The sample is placed in a locked room to which only the chemists have access. The sample remains in that room until the lab supervisor assigns it to a particular chemist for analysis. The chemist picks up the sample, performs an analysis, seals the package or envelope with a health department sticker containing the lab number, the date received and the date sealed, the chemical analysis results and the chemist's signature. He then places the sample in a locked vault until such time as it is to be introduced as evidence in a trial or returned to the law enforcement agency which originally sent it for testing. Each of the chemists identified the package he had placed in the vault, before it was introduced. Each also testified that the envelope he received for analysis showed no signs of having been tampered with when he received it. Each also stated that he had brought the sample with him when he came to testify and that the envelope in which it was received was in the same condition that it had been when he sealed it and placed it in the vault. The seal was broken and the envelope opened and its contents identified in the presence of the jury.

The appellant argues that the introduction of both samples was erroneous because the prosecution failed to properly complete the chain of custody of the evidence. More specifically, the appellant contends that to properly develop the chain of custody, the testimony should have included Stevens' identification of the samples introduced into evidence as those purchased from the appellant and the testimony of the department of health evidence technician concerning receipt of the samples in the mail.

To allow introduction of physical evidence, it is not necessary that every moment from the time the evidence comes into the possession of a law enforcement agency until it is introduced at trial be accounted for by every person who could have conceivably come in contact with the evidence during that period. Nor is it necessary that every possibility of tampering be eliminated; it is only necessary that the trial judge, in his discretion, be satisfied that the evidence presented is genuine and, in reasonable probability, has not been tampered with. See *Gardner* v. *State,* 263 Ark. 739, 569 S.W. 2d 74; *Wickliffe & Scott* v. *State,* 258 Ark. 544, 527 S.W. 2d 640; *Rogers* v. *State,* 258 Ark. 314, 524 S.W. 2d 227, cert. den. 423 U.S. 995, 96 S. Ct. 423, 46 L. Ed. 2d 369 (1975).

Rystrom testified that he mailed the pills given to him by Stevens to the health department via certified mail. The certified mail numbers on the envelopes introduced into evidence corresponded with those recorded by Rystrom. The envelopes were sealed when received at the department of health and remained in a locked room until the contents were analyzed. Each envelope was resealed by the chemist who conducted the tests and remained in a vault until the time of their introduction into evidence at the trial of the appellant. The appellant has not alleged that the samples were tampered with and the circumstances of this case do not suggest any significant possibility of tampering. In such a case we will not reverse the ruling of the trial judge in the absence of an abuse of discretion.

Point III of appellant's brief claims that it was error for the jury to be given an instruction on circumstantial evidence because the prosecution relied on direct evidence and not cir-

cumstantial evidence. Appellant apparently fails to recognize that circumstantial evidence was presented at trial. There was no direct evidence presented concerning what occurred between the time the envelopes were placed in the mail by Rystrom and when they were received by the department of health. Rather, it was from circumstantial evidence that the jury could find that the substances in the envelopes arrived in the same condition in which they were mailed, and that they were in the same condition at the time of the trial. The prosecution chose to rely on circumstantial evidence to establish that the envelopes were not tampered with while in the custody of the United States Postal Service in preference to facing the onerous burden of presenting the testimony of every employee who came in contact with the envelopes during their course of travel through the mail. Circumstantial evidence was the only practical method available to the prosecution to establish the chain of custody. In addition, the instruction given by the trial judge did not limit the jury to the consideration of circumstantial evidence in arriving at a verdict but merely stated, in part, that "[A] fact in dispute *may* be proved by circumstantial evidence as well as by direct evidence." [Emphasis ours.] It was for the jury to consider all of the evidence, circumstantial as well as direct, in arriving at a verdict and that was the purpose of the instruction given.

The appellant contends in Point IV that the trial judge erred in overruling an objection to the closing argument of the prosecuting attorney. The portion of the closing argument that the appellant's attorney objected to is as follows:

> Now, Mr. Duty wanted to make something big out of Jimmy [Stevens] saying outside the Courtroom, "I don't know anything about this" to some people of Mr. Munnerlyn's. I think good, old common, ordinary sense can tell you why he said that. He wasn't under oath out there, though, was he. He came in here under oath. Now, there's fear, some scared people here, but I think the fear that was put into them was not done by the law enforcement people. I think you saw Gary Mitchell. If *you noticed, he didn't look at you, he didn't look at me,* he didn't look at the reporter. Where did he look? Straight at the Defendant —.

Appellant says that no one testified that anyone connected with him had threatened Jim Stevens. The prosecuting attorney's argument was, at least in part, responsive to the following argument by appellant's attorney:

> * * * I don't think anybody is nice enough to think some pressure was not brought on Jim Stevens to go there and make a statement that he bought dope from David Munnerlyn. They picked him up, picked David Munnerlyn out. Here's a young man on probation that didn't even have to get mixed up and says he was forced into getting mixed up in this thing. I don't know what force, but we do know that he said, "I may have said this out here this morning that in talking to some people and was overheard. I don't really know a thing about this David Munnerlyn deal." How can you believe that fellow like that when he makes a statement and admits he made it out there in the hall this morning before the trial and then comes on the witness stand and admits, I made that statement. * * * I do not know these things, but I do know and I believe somewhere along the line, down the line the fear of God was put into Stevens by someone, someplace, but he didn't want to get mixed up in this.

The witness did testify on redirect examination as follows:

> Q. Now Jimmy, could you have told somebody out there that you didn't know anything about it?
>
> A. I may have.
>
> Q. Are you scared of anyone involved in this?
>
> A. (No audible response.)
>
> Q. Isn't it fair to say you're scared?
>
> A. Yes.
>
> Q. Is that why you would say that?

A. I guess.

Gary Mitchell testified for the state and the testimony he gave at trial was in contradiction of a statement made earlier by Mitchell in which he said that he had purchased controlled substances from the appellant on more than one occasion.

It is apparent from the quoted testimony and argument that the exertion of influence on the witnesses was placed in issue during the course of the trial. Items of evidence adduced at trial are suitable subjects for argument by the attorneys. *Gibson v. State,* 252 Ark. 988, 482 S.W. 2d 98. This court will not reverse the action of a trial court in matters pertaining to its controlling, supervising, and determining the propriety of, the arguments of counsel in the absence of manifest gross abuse. *Rowland v. State,* 263 Ark. 77, 562 S.W. 2d 590 and *Perry v. State,* 255 Ark. 378, 500 S.W. 2d 387. The jury was in better position than anyone else to know whether Mitchell acted as the prosecuting attorney stated. Allowing the argument of the prosecuting attorney in this case in light of the testimony presented and the jurors' opportunity to observe the witnesses was not an abuse of the trial judge's discretion and therefore does not constitute error. Furthermore, the trial judge, as part of Instruction No. 1, informed the jury that the arguments of the attorneys were not evidence and that "any argument, statements or remarks of attorneys having no basis in the evidence should be disregarded." We have previously been strongly influenced by the giving of this instruction (AMI, Civil, 101) in determining whether the trial judge has abused his discretion in respect to arguments by counsel.

We find no merit in any of the appellant's points and affirm the judgment.

We agree. HARRIS, C.J., and BYRD and HICKMAN, JJ.