Roger SHUFFIELD *v.* STATE of Arkansas

CA CR 87-85                                         745 S.W.2d 630

Court of Appeals of Arkansas
Division II
Opinion delivered February 24, 1988
[Rehearing denied March 23, 1988.]

168

*Wilson, Engstrom, Corum & Dudley*, by: *Wm. R. Wilson, Jr.*, and *Timothy O. Dudley*, for appellant.

*Steve Clark*, Att'y Gen., by: *Robert A. Ginnaven III*, Asst. Att'y Gen., for appellee.

JAMES R. COOPER, Judge. The appellant in this criminal case was charged with aggravated robbery and kidnapping. After a jury trial, he was convicted of those charges and sentenced to ten years in the Arkansas Department of Correction for aggravated robbery and twenty years for kidnapping, to be served consecutively. From those convictions, comes this appeal.

For reversal, the appellant contends that the trial court erred in refusing to exclude evidence on the ground that the State failed to comply with discovery rules and orders, and in allowing a witness to identify the appellant at trial in the absence of a finding that the State proved the witness's in-court identification was untainted by a pretrial photographic lineup. We find the appellant's first point to be meritorious, and we reverse.

The record contains evidence to show that a robbery took place on July 5, 1982. Three men gained admittance to the residence of James D. Sherman by claiming to be police officers. Once inside, one of the robbers placed a gun to Sherman's head, told him to lay down on the floor, and took the money from his billfold. Jacqueline Clark, who had been visiting Sherman, was taken to the living room at gunpoint. Sherman's sister, Montana Murry, returned to the residence from a party and was likewise forced to remain in the living room. Sherman's niece, also returning from the party, turned and ran from the gunmen and escaped. The robbers told Sherman that they were taking him to the police station, and compelled him to get into a car with them. Sherman testified that he, the three men who had entered the house, and a woman who had waited in the car drove off. A controversy arose between his abductors over whether they should kill Sherman; after the woman and one of the men refused to have any part in a killing, the car was stopped and Sherman was released. At trial, Mr. Sherman, Ms. Clark, and Ms. Murry identified the appellant as one of the gunmen.

Sherry Crawleigh also testified at trial, stating that she was

the woman who waited in the car during the robbery. She testified that her identification of the appellant as one of the gunmen was based on a period of association of approximately four hours, beginning on the afternoon of July 4, 1982, when the appellant sold a handgun to Robert Overton at her apartment. At 11:00 p.m. the same day she saw the appellant, accompanied by Robert Overton and Tommy Denton, in a store. She joined the group, which went to Overton's residence around midnight. She stated that they smoked marijuana at Overton's house and that, in the course of the evening, she also smoked hashish, drank whiskey and beer, took diet pills and several varieties of "speed," and used cocaine. Ms. Crawleigh could not recall whether or not she had also taken LSD. She stated that she told Denton, Overton, and the appellant that she had bought some hashish from James Sherman; the men decided that Sherman had cheated her and that they would go to Sherman's residence to get her money back. She testified that the appellant left and returned with a badge and a pistol, that Denton armed himself with a shotgun, and that Overton armed himself with a knife. They then drove to Sherman's house, where the three men forced their way inside while she waited in the car. Finally, Ms. Crawleigh testified that the men returned to the car with Sherman, and that Sherman was released after she opposed the appellant's suggestion that they kill him. On cross-examination, Ms. Crawleigh conceded that she identified one of the robbers as "Jim" in her statement to the police, and stated that she had since decided that the man she identified as "Jim" was the appellant, Roger Shuffield.

The record also shows that the appellant's attorney received neither a witness list nor information regarding any possible criminal history of James Sherman, although these items were requested in the appellant's discovery motion and the trial court entered two separate orders requiring the State to comply with the discovery motion. At a hearing on the appellant's motion for a new trial, the appellant's attorney stated that the only information obtained in response to his discovery motion was essentially a copy of the police file, containing the names of the people who testified at trial but also containing the names of several dozen other people who did not testify. Officer R.D. Branch, a policeman involved in the investigation of this case, testified at trial that

he believed that certain reports and files compiled by the police were not properly delivered to the Hot Spring County Prosecutor.

As his first point for reversal, the appellant contends that the trial court erred in refusing to exclude evidence on the ground that the State failed to comply with discovery rules and orders. Specifically, the appellant argues that it was error to permit Montana Murry to testify because the State did not provide a witness list naming her as a witness. Ms. Murry was allowed to testify at trial over the appellant's objection; in addition to identifying the appellant, she testified that she had given a statement to police officers after the robbery and abduction.

■■ The State is required, upon timely request, to disclose the names and addresses of persons the prosecuting attorney intends to call as witness at any hearing or trial. A.R.Cr.P. Rule 17.1. The State does not contend that Ms. Murry was properly listed as a witness in the case at bar, but argues that Ms. Murry presented herself to the prosecution on the day before trial, that the State did not previously intend to call her as a witness, and that any prejudice resulting from the failure to timely notify the appellant that she would testify was cured because the defense attorney was permitted a brief interview with Ms. Murry prior to trial. We do not agree. Information held by the police is imputed to the prosecution's office. *Lewis* v. *State*, 286 Ark. 372, 691 S.W.2d 864 (1985). In the case at bar, Ms. Murry stated at trial that, after the robbery and kidnapping, she gave a statement to a police officer indicating that she was present when the events in question occurred and that she could identify the criminals. Ms. Murry also stated that she provided the police officer with her name and address. In *Lewis*, the Supreme Court held that Rule 17.1 was not complied with where the prosecution had no knowledge of a witness until the morning of trial, but that witness had given crucial information to the police which was imputed to the office of the prosecution. *Lewis* v. *State, supra.* In the case at bar, Ms. Murry's testimony regarding her statement to the police is uncontradicted, and there is evidence that all of the information available to the police was not properly delivered to the prosecutor's office. Under these circumstances, we think that *Lewis* v. *State, supra*, is controlling, and hold that the State did not

comply with A.R.Cr.P. Rule 17.1.

■ Nor do we think that the brief interview with Ms. Murry afforded to defense counsel was sufficient to cure the error. It is apparent that the appellant's defense was based on the theory of misidentification, and that one of the persons who identified him at trial was neither in full possession of her faculties during the events in question nor able to correctly identify the appellant by name. The appearance, on the day before trial, of a new witness capable of identifying the appellant as one of the gunmen was thus prejudicial to the appellant's case. In cases where prejudice will result from the State's failure to comply with pretrial discovery rules, the trial court must take appropriate action to remove that prejudice by excluding the evidence, ordering discovery, granting a continuance, or entering another order appropriate under the circumstances. *Nelson* v. *State*, 274 Ark. 113, 622 S.W.2d 188 (1981). Under the circumstances presented in the case at bar, we think that the prejudice could have been cured only through exclusion or continuance, and hold that the trial court erred in failing to so act. *See Lewis* v. *State, supra*. We therefore reverse and remand for a new trial.

We address the remaining issues advanced by the appellant because they might arise again in a new trial. He argues that the trial court erred in permitting Mr. Sherman to identify the appellant at trial because the State did not disclose that Sherman had identified the appellant in a pre-trial lineup, but instead responded to the appellant's discovery motion by providing information indicating that Sherman had been unable to identify the appellant. The appellant contends that the State deliberately withheld information concerning Sherman's pre-trial identification of the appellant. The State asserts that it had no knowledge of any pre-trial identification of the appellant by Sherman, and suggests that no such identification had occurred.

■ We cannot say, on the basis of the record before us, that the State suppressed information concerning a pre-trial identification of the appellant by Sherman. Although Sherman testified that he identified the appellant at a lineup, Officer Branch stated that Sherman did not identify the appellant when shown a

photographic lineup which included the appellant's photograph. Moreover, the discovery information which assertedly misled defense counsel has not been included in the record. Finally, the appellant cites no authority to support the proposition that the State is required to disclose that a victim had identified the defendant in a pre-trial lineup. Rule 17.1(a)(i), A.R.Cr.P., requires only that the names and addresses of witnesses be disclosed by the prosecuting attorney. Although a witness's statement relating to pre-trial identification would be subject to inspection upon the defendant's motion after that witness had testified at trial, *see* Ark. Stat. Ann. § 43-2011.3 (Repl. 1977), no such motion was made in the case at bar. Instead, the appellant made a pre-trial motion to exclude the witness's testimony on the ground that he had not been informed through discovery that Sherman had identified him in a lineup. Because the information requested by the appellant was not subject to discovery until after Sherman testified, Ark. Stat. Ann. § 43-2011.3(a) (Repl. 1977), we hold that the trial court did not err in denying the motion to exclude Sherman's in-court identification.

■ Next, the appellant argues that the trial court erred in failing to remove the prejudice resulting from the State's failure to furnish the appellant a record of prior criminal convictions of persons the prosecuting attorney called as witnesses at trial. We agree. Such disclosure is required by A.R.Cr.P. Rule 17.1(a)(vi), and we think that the appellant's motion required a direct response, either listing the potential witnesses' criminal convictions or stating that no record of convictions had been found after diligent, good-faith efforts by the prosecuting attorney to obtain such information from other government personnel. A.R.Cr.P. Rule 17.3(a); *see Dever* v. *State*, 14 Ark. App. 107, 685 S.W.2d 518 (1985). There was testimony at trial to show that Sherman had sold hashish to Ms. Crawleigh on numerous occasions, and, at a hearing on a motion for a new trial, the appellant's trial attorney testified that officers of the Hot Spring County Sheriff's Department had informed him that James Sherman had a criminal history. We find that the appellant was prejudiced by the State's failure to properly respond to his discovery request for the criminal records of potential witnesses, and hold that the trial court erred in failing to take appropriate steps to remove that

prejudice. *Nelson* v. *State, supra.*

Finally, the appellant contends that the trial court erred in denying his motion to suppress Ms. Crawleigh's anticipated in-court identification of the appellant. The motion to suppress alleged that Ms. Crawleigh had identified the appellant after viewing a photograph provided by police officers; that no live or photographic lineup was conducted; and that the identification procedure was so impermissibly suggestive that it gave rise to a very substantial likelihood of irreparable misidentification, thus depriving the appellant of due process of law.

■ Where an out-of-court identification is so unnecessarily suggestive that there is a substantial likelihood of mistaken identification, due process is denied in violation of the Fourteenth Amendment to the United States Constitution. *Stovall* v. *Denno*, 388 U.S. 293 (1967); *Williams* v. *State*, 5 Ark. App. 20, 632 S.W.2d 235 (1982). If the identification procedure is found to be impermissibly suggestive, the court must determine whether, under the totality of the circumstances, the identification was nevertheless reliable. *Neil* v. *Biggers*, 409 U.S. 188 (1972). Reliability is the linchpin in determining the admissibility of identification testimony in a criminal trial, *Manson* v. *Brathwaite*, 432 U.S. 98 (1977), and reliable identification testimony is admissible despite an unnecessarily suggestive identification procedure. *Id.; Jones* v. *State*, 15 Ark. App. 283, 692 S.W.2d 775 (1985). The inquiry thus has two branches: first, the defendant must show that the pretrial identification procedure was so suggestive as to taint subsequent identifications. *Neil* v. *Biggers, supra; United States* v. *Briggs*, 700 F.2d 408 (7th Cir.), *cert. denied*, 462 U.S. 1110 (1983); *Jones* v. *State, supra*. If suggestiveness is established, the State bears the burden of proving that the subsequent identification was reliable. *Jones* v. *State, supra; see Sims* v. *State*, 258 Ark. 940, 530 S.W.2d 182 (1975); *see generally* N. Sobel, *Eyewitness Identification* (2d ed. 1987).

A pretrial hearing was conducted on the motion to suppress Ms. Crawleigh's identification of the appellant. Officer Branch testified that he interviewed Ms. Crawleigh in the course of his investigation of the robbery and kidnapping. During the inter-

view, Ms. Crawleigh referred to one of the participants in the crime as "Jim," and she identified the appellant, Roger Shuffield, as the man she had referred to as "Jim" after she had been shown the appellant's photograph. Officer Branch stated that he was present when Ms. Crawleigh identified the appellant from the photograph, but he could not recall showing it to her. He admitted that, although standard police procedure requires that the showing of a photographic display be noted on the police report of an interview, no such notation appeared in the police report he completed after interviewing Ms. Crawleigh. Instead, the report reflected only that she had been shown "a photograph." Officer Branch had in his possession a display consisting of six photographs, including one of the appellant, which he had prepared, but he could not recall how, or even if, the display was presented to Ms. Crawleigh. The display was not offered into evidence. Ms. Crawleigh also testified at the hearing, stating that she was shown more than three photographs, and that from these she identified the appellant, Denton, and Overton. She could not recall the precise number of photographs shown her, nor could she recall whether she was shown one photographic display or several. She further stated that she could identify the appellant as one of the men she accompanied on the night of the crime regardless of the photograph. The trial court found that there was no evidence to show that the photographic display tainted her ability to identify the appellant, and denied the motion to suppress.

██ Citing *Sims* v. *State*, 258 Ark. 940, 530 S.W.2d 182 (1975), the appellant contends that the court erred in requiring him to bear the burden of proving that the witness's identification was tainted by suggestive identification procedures. We note that *Sims* was based upon the sixth amendment right to counsel that attaches when physical lineups are conducted, and is thus not directly on point in the case at bar, where a due process violation was alleged. *See Williams* v. *State*, 5 Ark. App. 20, 632 S.W.2d 235, 237 (1982). Moreover, as we have noted, the State's burden of proving the reliability of the subsequent identification arises only after the defendant has made an initial showing that the pretrial identification procedure was impermissibly suggestive. Although it may be true that a defendant's burden of showing suggestiveness may be impossible to meet when the photographic

display is unavailable and evidence of the display's composition is inadequate for purposes of determining its propriety or suggestiveness, we hold that the trial court reached the correct result. In ruling on the admissibility of the subsequent identification, he stated that neither the photographic display nor the interview with police officers "tainted *her ability to identify*" the appellant. We think that this statement clearly implies that the trial judge found that Ms. Crawleigh's identification was based upon an independent source, and that such a finding was supported by Ms. Crawleigh's testimony that she knew the appellant as the man who was with her on the night in question, regardless of the lineup.

Reversed and remanded.

CORBIN, C.J., agrees; JENNINGS, J., concurs.