Judy HOLBIRD v. STATE of Arkansas

CR 89-155                              784 S.W.2d 171

Supreme Court of Arkansas
Opinion delivered February 20, 1990

*R. Paul Hughes III*, for appellant.

*Steve Clark*, Att'y Gen., by: *Kelly A. Procter*, Asst. Att'y Gen., for appellee.

STEELE HAYS, Justice. Judy Holbird was convicted by a jury of attempted capital murder and of possession of a firearm by a felon, receiving a sixty year sentence for the attempted capital murder and a twelve year sentence for the possession of a firearm. She appeals from the judgment on the convictions. We find no error.

Appellant contends that the trial court erred in denying her motion for a mistrial when it was discovered early in the trial that one of the jurors was acquainted with a witness. During voir dire potential juror Cecil Moss failed to indicate that he knew any of the state's witnesses. After the state concluded its direct examination of Detective David Caldwell of the Fort Smith Police Department, an eyewitness to the crime, the following exchange occurred:

JUROR:

> I didn't recognize the witness, but I have met this witness one time before.

THE COURT:

> Is there anything about that that would keep you from being fair and impartial if you sit on this jury?

JUROR:

> None, your Honor.
> (Note: Juror indicated above is Rex [Cecil] Moss).

The trial judge determined that the juror had failed, innocently,

to recognize Detective Caldwell during voir dire and, realizing his mistake, thought it important to inform the Court of their prior meeting. After questioning Moss, the judge ruled out any underlying bias and allowed him to remain on the jury.

In *Clay* v. *State*, 290 Ark. 54, 716 S.W.2d 751 (1986), we held that the trial judge did not err in denying a mistrial when, after the trial had commenced, a juror told the trial judge that he knew the prosecutrix. The juror recalled meeting her a few years earlier when he repaired a typewriter at a bank where she worked. This juror also indicated to the trial judge that he could be a fair and impartial juror.

Similarly, Juror Moss, after the trial had commenced, remembered meeting Detective Caldwell on a prior occasion and promptly notified the court. Moss also told the trial judge that he could be a fair and impartial juror and nothing to the contrary was shown or even suggested. The determination of whether a mistrial is called for is within the sound discretion of the trial court. *Brazel* v. *State*, 296 Ark. 563, 759 S.W.2d 28 (1988). Reviewing the facts, we do not find that the trial judge abused his discretion.

The appellant next objects to the introduction of a .32 caliber bullet, state's exhibit #9. Appellant contends the state failed to properly establish the bullet's chain of custody. The state attempted to prove that the .32 caliber bullet removed from Detective Haney's thigh was shot from the appellant's .32 caliber handgun. The appellant, to the contrary, contended that Detective Haney accidentally shot himself with his own .38 caliber gun and the bullet removed from his leg was replaced with a .32 caliber bullet to frame the appellant.

The evidence at trial indicates that Nurse Jean Simpson, Operating Room Supervisor for Sparks Regional Medical Center, was in the operating room when the bullet was removed from Detective Haney's thigh. Nurse Simpson testified that Dr. Wikman removed the bullet, handed it to a surgical assistant, Larry Bray, and Bray placed the bullet in a specimen cup, properly labeled. Larry Bray then gave the cup to Ms. Simpson who delivered the bullet to Detective Champion, in accordance with hospital policy. She identified the specimen cup at trial as identical to those used at the hospital.

On cross-examination, Ms. Simpson was asked if she were shown two or three different bullets whether she could identify the one she saw removed from Detective Haney's leg. She replied that she knew the bullet removed was a large bullet but could not, if shown a bullet, unequivocally say it was the bullet removed from Detective Haney's thigh. From this series of questions, the appellant asserts that the chain of custody of the bullet was broken.

The purpose in establishing the chain of custody is to prevent the introduction of evidence which is not authentic. *White* v. *State*, 290 Ark. 130, 717 S.W.2d 784 (1986). To prove authenticity, the state must demonstrate that the evidence has not been altered in any significant manner. *Wilson* v. *State*, 277 Ark. 43, 639 S.W.2d 45 (1982). However, it is not necessary that every possibility of tampering has been eliminated; it is only necessary that the trial judge, in his or her discretion, be satisfied that the evidence presented is genuine and, in reasonable probability, has not been tampered with. *Munnerlyn* v. *State*, 264 Ark. 928, 576 S.W.2d 714 (1979). Here, the trial judge found that the chain of custody was adequate. The only evidence of tampering was the appellant's testimony. Any minor discrepancies in the chain of custody are for the trial court to weigh and, absent some evidence of tampering, the trial judge is accorded discretion and we will not reverse the ruling unless there is a clear abuse of discretion. *Neal* v. *State*, 298 Ark. 565, 769 S.W.2d 414 (1989). We find no abuse of discretion here.

The appellant contends that the trial court erred in admitting the testimony of Ronald Anderjack, the state's firearm expert. However, the appellant's brief fails to present either authority or persuasive reasoning on this point, therefore, we need not address this issue. *Dixon* v. *State*, 260 Ark. 857, 545 S.W.2d 606 (1977).

AFFIRMED.