Larry VAN PELT *v*. STATE of Arkansas

CR 90-275                                           816 S.W.2d 607

Supreme Court of Arkansas
Opinion delivered October 7, 1991

*Killough, Ford & Hunter*, by: *S. Kyle Hunter*, for appellant.

*Winston Bryant*, Att'y Gen., by: *J. Brent Standridge*, Asst. Att'y Gen., for appellee.

ROBERT L. BROWN, Justice. The appellant, Larry Van Pelt, was convicted of capital murder and sentenced to life without parole for the shooting death of a store clerk, Bernice Henyard, in Parkin, Arkansas. The appellant raises five arguments on appeal. The arguments have no merit, and we affirm the conviction.

On October 24, 1989, between 11:00 p.m. and 11:30 p.m., Henyard was working at P.J.'s Country Store in Parkin. Her fiance, Anthony Dinwiddie, was in the store eating chicken at a booth and visiting with her. While there, Dinwiddie noticed a man in a white cowboy hat walking down the sidewalk toward the store. The man pushed his hat down over his head as he passed the store window. He then stopped and returned to his car. Dinwiddie's next recollection was of the man in the store talking to the victim. Dinwiddie heard the sound of money in the cash register, and then Henyard screamed his name. The man pointed a gun at Dinwiddie and said, "Get your ass up here." Dinwiddie went to the counter and was within six to eight feet of the man, who said to Henyard, "Give me all your money, bitch." She handed him a stack of bills. The gunman pointed the gun at her head and shot her in the right eye, killing her instantly. Dinwiddie immediately raced to the door, and the gunman fired a shot at him which missed but shattered the glass in the door. Dinwiddie ran across the parking lot, turned, and saw the man get into his white car. Because of the lighting Dinwiddie was able to get part of the license number. He gave chase in his car, encountered a police

officer, told him the story, and the officer continued pursuit. The license number and car description were dispatched over police radio, and a man in a white Lincoln was stopped and arrested within the hour. The arresting deputies seized a white cowboy hat, a baseball cap containing money, and a .22 automatic pistol from the suspect's car. Dinwiddie, meanwhile, had returned to P.J.'s Country Store, and then went to his uncle's house, his own home, and finally to the Parkin police station.

While at the station Dinwiddie heard a report from the radio dispatcher that a suspect had been arrested. When the sheriff and car with the suspect arrived, Dinwiddie looked out the window and saw the handcuffed man. At that point he said, "Yeah, that's the son-of-a-bitch that did it." When the suspect was escorted into the room where Dinwiddie was sitting, Dinwiddie struck him in the face with his fist. Dinwiddie was shown no photographs, and no line-up was conducted.

At the trial, which took place from July 30 through August 2, 1990, Dinwiddie identified the appellant in court as the gunman. The shell casings found at the country store were also identified by expert testimony as having been fired from the pistol found in the appellant's car.

■ For reversal of his conviction the appellant first argues that the death penalty as set out at Ark. Code Ann. § 5-10-101 (Supp. 1991) constitutes cruel and unusual punishment under the Eighth Amendment. We dismiss this argument. Case authority is clear that the appellant, having received a sentence of life without parole, has no standing to challenge the constitutionality of the death penalty. *See Weaver* v. *State*, 305 Ark. 180, 806 S.W.2d 615 (1991); *Sumlin* v. *State*, 266 Ark. 709, 587 S.W.2d 571 (1979).

■ The appellant next asserts that the trial court erred in denying his motion to prohibit the prosecutor from qualifying the jury for consideration of the death penalty, which denied him an impartial jury under the Sixth Amendment. This argument has been raised many times and has also been decisively disposed of by both the United States Supreme Court and this court. *See Lockhart* v. *McCree*, 476 U.S. 162 (1986); *Bell* v. *State*, 296 Ark. 458, 757 S.W.2d 937 (1988). The appellant gives us no compelling reason to reexamine the issue.

■ For his third argument the appellant contends that the capital murder statute overlaps impermissibily with our first-degree murder statute. *See* Ark. Code Ann. §§ 5-10-102(a)(2) and 5-10-101(a)(4) (Supp. 1991). This overlapping occurs, according to the appellant, with the degree of purposeful action required in the two statutes. Capital murder requires "the premeditated and deliberated purpose of causing the death of another person" while first-degree murder mandates "the purpose of causing the death of another person." We have held repeatedly that while the two statutes may appear to overlap on the degree of required intent, this does not render them unconstitutional due to vagueness or arbitrariness. *See Smith* v. *State*, No. CR 91-71 (September 23, 1991); *Weaver* v. *State, supra*; *Hill* v. *State*, 303 Ark. 462, 798 S.W.2d 65 (1990). As we said in *Hill*, our case law regards first-degree murder as a lesser included offense subsumed in the capital murder offense. The appearance of overlap raised by the appellant does not deny the appellant his right to due process, and we affirm yet again the constitutionality of both sections of our Criminal Code.

The appellant's principal argument centers on the trial court's decision to allow Dinwiddie's in-court identification, irrespective of his prior encounter with the appellant at the police station. The appellant's theory is that the "show-up" procedure with the deputies' escorting only the appellant into the police station was unduly suggestive and tainted any further identification by Dinwiddie. We disagree. We will not reverse a trial court's ruling on the admissibility of an in-court identification unless that ruling is clearly erroneous under the totality of the circumstances. *Bowden* v. *State*, 297 Ark. 160, 761 S.W.2d 148 (1988). In determining whether an in-court identification is admissible, we first look at whether the pretrial identification procedure was unnecessarily suggestive or otherwise constitutionally suspect. *Maulding* v. *State*, 296 Ark. 328, 757 S.W.2d 916 (1988); *Bowden* v. *State, supra*. It is the appellant's burden to show that the pre-trial identification procedure was suspect. *Shuffield* v. *State*, 23 Ark. App. 167, 745 S.W.2d 630 (1988).

■ In the case before us, although Dinwiddie was present at the time of the appellant's arrival in custody, there is no evidence suggesting that the police brought the appellant to the station to facilitate an identification by Dinwiddie. Dinwiddie

made his initial identification spontaneously and before the appellant was brought inside the building. Moreover, he could not have known for certain that the person who was getting out of the sheriff's car was indeed the suspect in that crime.

We have previously recognized that witness identification of a suspect at a police station, when the police have not orchestrated a pre-trial identification, does not invalidate a subsequent in-court identification. *Murphy v. State*, 269 Ark. 181, 599 S.W.2d 138 (1980); *Pollard v. State*, 258 Ark. 512, 527 S.W.2d 627 (1975); *see also Coleman v. Alabama*, 399 U.S. 1 (1970), which involved a spontaneous identification of a suspect as he stepped onto the stage in the line-up room. In *Murphy*, the witness saw a suspect get out of a police vehicle at the station after having seen the man outside her bedroom window a short time before. In *Pollard*, a witness who was waiting for a line-up identified the suspect as he walked with other line-up participants from the jail-cell area. We upheld the identifications in both cases.

Even had the pre-trial identification been impermissibly suggestive, the taint of an improper "show-up" was removed by the clear and convincing evidence that the in-court identification was based upon Dinwiddie's independent observations of the suspect. *See Bowden v. State, supra.* Reliability is the linchpin in determining the admissibility of identification testimony, and in determining reliability, the following factors are considered: (1) the prior opportunity of the witness to observe the alleged act; (2) the accuracy of the prior description of the accused; (3) any identification of another person prior to the pre-trial identification procedure; (4) the level of certainty demonstrated at the confrontation; (5) the failure of the witness to identify the defendant on a prior occasion; and (6) the lapse of time between the alleged act and the pre-trial identification procedure. *Id.*

Here, Dinwiddie was at the store when the person he identified as the appellant entered, ordered him to approach, took money from the victim, and shot her. For approximately thirty seconds the appellant had his gun trained on both Dinwiddie and the victim, and Dinwiddie stood within six to eight feet of him. He could see the uncovered face of the appellant clearly and later described him as a white male about forty years of age, clean-shaven with two-tone blond hair, who was wearing a light shirt,

dark pants, and a white cowboy hat. This description fit the appellant at the time of his arrest. Dinwiddie never identified another person as the culprit, and his identification of the appellant after arrest was certain and unwavering. Furthermore, the time between the murder and the identification was relatively brief. The murder occurred at about 11:30 p.m., the arrest was effected between 11:30 and 12:00 midnight, and the identification at the station followed soon thereafter.

It is for the trial court to determine whether there are sufficient aspects of reliability surrounding the identification to permit its use as evidence, and it is then for the jury to decide what weight should be given to the identification testimony. *McConaughy v. State*, 301 Ark. 446, 784 S.W.2d 768 (1990). Under the facts of this case, the in-court identification was reliable, and we affirm the trial court's ruling.

For his last point the appellant argues that a substantial break in the chain of custody of the two spent shell casings occurred which warranted suppression of those casings. Evidencing this break, according to the appellant, was a lack of testimony at trial by the person who physically received the items from the investigator and by the person who took them to the firearms expert.

The record does not support the appellant's assertions. The Crime Lab investigator testified that he received the box of physical evidence, which included the casings, from the police officer who retrieved the evidence at the crime scene. The investigator further testified that, though he did not place his initials on the box, he had it exclusively in his custody until he delivered it to the State Crime Lab where it was placed in the evidence vault. He stated that standard procedure was for the Chief Morgue Technician to transfer the evidence to the Central Receiving Area. From there it would be taken to the Firearms Section. He further testified that though he did not put his initials on the evidence box, the box presented to him at trial appeared "similar" or "identical" to that received from the Parkin police. Nothing in the record before us indicates that this routine procedure was disrupted.

We have held that it is necessary for the prosecutor to demonstrate that the evidence has not been altered in any

significant manner before it reached the Crime Lab expert. *See Holbird* v. *State*, 301 Ark. 382, 784 S.W.2d 171 (1990). It is not necessary, however, that every possibility of tampering be eliminated; it is only necessary that the trial court, in its discretion, be satisfied that the evidence presented is genuine and has not, in reasonable probability, been subjected to tampering. *Id*; *Munnerlyn* v. *State*, 264 Ark. 928, 576 S.W.2d 714 (1979). It is not required, moreover, that every moment, from the time the evidence came into the possession of a law enforcement officer until it is introduced at trial, be accounted for by every person who could have conceivably come in contact with the evidence during that period. *Phills* v. *State*, 301 Ark. 265, 783 S.W.2d 348 (1990).

We acknowledge that there were gaps in the testimony concerning the movement of the box with the casings from the time it left the custody of the Crime Lab investigator to the time the casings came into the custody of the firearms expert. These relatively minor discrepancies, though, are committed to the trial court's discretion for weighing. The court found that the gaps were not substantial enough to warrant suppression. We agree and will not reverse the trial court's ruling absent some evidence of tampering, which the appellant did not produce. On this point we note that though the Crime Lab investigator did not put his initials on the sealed evidence box containing the casings, he was sufficiently certain that box presented to him at trial which contained the casings was the same box he placed in the evidence vault.

An examination of the record has been made in accordance with Ark. Sup. Ct. R. 11(f) and it has been determined that there were no rulings adverse to the appellant which constituted prejudicial error.

Affirmed.