Bobby Dale WILLIAMS *v.* STATE of Arkansas

CR 90-185                                    801 S.W.2d 296

Supreme Court of Arkansas
Opinion delivered December 21, 1990

*William R. Simpson, Jr.*, Public Defender, *Omar F. Greene II*, Deputy Public Defender, and *Richard Lewallen*, Deputy Public Defender, by: *Omar F. Greene II*, Deputy Public Defender, for appellant.

*Steve Clark*, Att'y Gen., by: *Kelly K. Hill*, Asst. Att'y Gen., for appellee.

Tom Glaze, Justice. Appellant, along with codefendant Yvette Foster, was charged with delivery of a controlled substance, cocaine. At trial, the trial court granted Foster's directed verdict motion and dismissed her case, but appellant's case went to the jury which convicted him. Appellant was sentenced to forty years imprisonment as a habitual offender. On appeal, appellant raises four points for reversal. We affirm.

Appellant first challenges the fee arrangement between the North Little Rock Police Department and the confidential informant to whom appellant allegedly sold the cocaine. The informant was paid $60.00 for each successful drug transaction that he completed. Appellant also complains that the informer, who had moved from the state after appellant and Foster were charged, was also reimbursed his expenses by the North Little Rock Police Department and paid "court leave" by his employer during the period the informant appeared as a witness. Appellant asserts that these payments and reimbursements violate Ark. Code Ann. § 16-43-801(2) (1987), a witness fee provision, and his constitutional rights to due process under the United States and

Arkansas Constitutions.[1] We disagree.

First we address the language in § 16-43-801(2) which provides that witnesses in criminal cases shall be paid at a rate of $5.00 per day. Appellant argues this statute was violated since the arrangements in this case resulted in the informant being paid more than $5.00 per day for his testimony. In examining the language in § 16-43-801(2), we find no indication that the General Assembly intended the $5.00 to be a ceiling amount. In fact, this same statute provides the same $5.00 amount in civil cases, and this court, in promulgating ARCP Rule 45, established a $30.00 per day witness fee plus a $0.25 per mile travel amount. More importantly, though, the arrangements in this case do not constitute compensation for the witness's appearance in court. An original payment of $60.00 was made to the informant at the time of the drug transaction; it was not connected to his appearance in court as a witness. Also, payment of the informant's expenses is not precluded under § 16-43-801(2), nor is any payment made to him by his employer.

In support of his argument that the contingent nature of the informant's fee violates due process, appellant cites the Florida case of *State* v. *Glosson*, 441 So.2d 1178 (Fla. Dist. Ct. App. 1983), *appr'd.* 462 So.2d 1982 (Fla. 1985). In *Glosson*, the confidential informant had an arrangement with the authorities whereby he would receive ten percent of all civil forfeitures resulting from criminal investigations in which he was involved. However, the payment of the informant's fee in *Glosson* was contingent on his cooperation, testimony in, and successful prosecution of the case. Based upon these circumstances, the Florida court held the contingent fee arrangement to be violative of due process.

Initially, we note that Florida appears to be the only state which has held that the use of contingent fee informants violates due process. Even in Florida, the *Glosson* decision has been narrowly interpreted and limited to its facts. *See* Annotation, *Contingent Fee Informant Testimony in State Prosecutions*, 57

---

[1] Appellant also sought to have this court rule on the propriety of a purported $200.00 fee paid a confidential informant in an unconnected case. Because such a fee is not involved in this case, we do not consider it.

A.L.R.4th 643 (1987). Further, the case specifically relied upon by *Glosson* for its holding, *Williamson* v. *United States*, 311 F.2d 441 (5th Cir. 1962), was expressly overruled in *United States* v. *Cervantes-Pacheco*, 826 F.2d 310 (5th Cir. 1987), *cert. denied*; *Nelson* v. *United States*, 484 U.S. 1026 (1988).

Additionally, the case before us is clearly distinguishable from *Glosson*. Here, the confidential informer was paid $60.00 for each completed drug transaction, and his payment was not contingent upon his cooperation, testimony and the successful prosecution of the case, as was the situation in *Glosson*. Thus, *Glosson* is not applicable to this case.

▪ We choose to follow the strong policy articulated in *Hoffa* v. *United States*, 385 U.S. 293 (1966), that the veracity of a witness is left to be tested on cross-examination, and the credibility of a witness's testimony is to be determined by a properly informed jury. Historically, this state has followed the general rule that credibility of witnesses is for the jury. *See Wallace* v. *State*, 28 Ark. 531 (1873). There is no reason to change that policy now. As long as the informant is subject to cross-examination regarding the fee arrangement, as he was in the present case, there is no reason to reverse a conviction simply because an informant was paid a contingent fee for his services. In other words, it should be left to the jury to evaluate the credibility of the compensated witness.

For his second point, appellant argues that, if we find it was not error to allow the testimony of the contingent fee informant, we should find error in the trial court's refusal to give appellant's proffered cautionary instruction on the credibility of informants. Appellant's proffered instruction reads as follows:

> The testimony of a paid informer, or any witness whose self-interest or attitude is shown to be such as might tend to prompt testimony unfavorable to the accused, should always be considered with great caution and care.

▪ While some federal courts have adopted such cautionary informer instructions, our court has not. The trial judge here correctly gave AMCI 104 which contains the general instruction on the credibility of witnesses. Because AMCI 104 adequately instructed the jury with respect to the credibility issue, the judge

was not required to repeat the instruction in a different manner. *See Sumlin* v. *State*, 266 Ark. 709, 587 S.W.2d 5171 (1979).

Appellant next contends the trial court erred in not granting his motion for severance. Immediately prior to trial, appellant moved for a severance based on information that the confidential informant's testimony was gong to focus more on appellant than his codefendant, Foster. According to appellant, the defenses had become "antithetical." However, at trial the informant's testimony did not focus solely on appellant, but implicated his codefendant as well. Two officers who were conducting surveillance of the transaction also implicated Foster. Further, neither defendant attempted to place the blame on the other.

Severances are to be determined by the trial court on a case-by-case basis in the light of all attendant circumstances. It is an exercise of judicial discretion. *Ruiz* v. *State*, 299 Ark. 144, 772 S.W.2d 297 (1989). The trial court's ruling on a motion to sever will only be reversed when that discretion has been abused. *Wilkins* v. *State*, 292 Ark. 596, 731 S.W.2d 775 (1987). Also, a trial court is said to have abused its discretion when it is manifest from the record that a severance was necessary in order to have a fair determination of an accused's guilt or innocence. *Legg* v. *State*, 262 Ark. 583, 559 S.W.2d 22 (1977). In light of the fact that appellant's codefendant was implicated by both the informant and the officers, it is not manifest from the record that a severance was necessary to a fair determination of the appellant's guilt or innocence. Therefore, we cannot say the trial court abused its discretion.

Also on the issue of severance, appellant argues that the trial court was in error in not granting a severance after it directed a verdict in favor of his codefendant. According to appellant, this was prejudicial because it prevented him from arguing the guilt of his codefendant in his closing argument. Appellant failed to raise this argument below, and as we have previously held, parties on appeal are bound by the scope and nature of those arguments presented to the trial court for its consideration. *Taylor* v. *State*, 299 Ark. 123, 771 S.W.2d 742 (1989). Therefore, we do not reach this argument since it is made for the first time on appeal.

Finally, appellant contends that the "pen pack" offered by the state was insufficient to establish beyond a reasonable doubt

that he had been previously convicted of four felonies. Specifically, appellant contends that one of the judgment and commitment orders in the pack was for a James L. Williams, a/k/a Bobby Dale Williams, who was convicted of theft of property in Pine Bluff in 1979. He contends the order is inconclusive as to whether it represents one of appellant's convictions rather than one belonging to someone else, using appellant's name as an alias. He also asserts that the Arkansas Department of Correction Admission Summary indicates he was found not guilty of one of the alleged convictions.

■■ Appellant is correct in stating that the state has the burden of proving a defendant's prior convictions for purposes of the habitual offender statute. *Stewart* v. *State*, 300 Ark. 147, 777 S.W.2d 844 (1989). However, the statute specifically permits the proof to be by *any evidence* that satisfies the trial court beyond a reasonable doubt that the defendant has previously been convicted of the felonies alleged. Ark. Code Ann. § 5-4-504(a) (1987); *Thomas* v. *State*, 303 Ark. 210, 795 S.W.2d 917 (1990). Further, while the trial court must find the existence of the convictions beyond a reasonable doubt, the test on appeal is whether there is substantial evidence that the appellant was convicted of the felonies in question. *Stewart*, 300 Ark. 147, 777 S.W.2d 844.

In reviewing the "pen pack," we find it contains numerous records, including ones from the Arkansas Department of Correction Sentence Data Records and the United States Department of Justice, which indicate appellant, Bobby Dale Williams, was convicted of theft of property in 1979. There is also abundant evidence that he was convicted of two counts of theft of property in 1976 and one count of theft by receiving in 1982. Also, the "pack" was accompanied by fingerprints of appellant and was certified as being the original penal records of appellant.

From our review of the "pen pack," we conclude there is substantial evidence to support the trial court's finding that appellant had been previously convicted of four felonies. And with respect to appellant's additional argument that one of the penal records indicates he was found not guilty of the 1979 theft of property offense, appellant simply misreads the record. Instead, that record indicates the appellant entered a *plea* of not

guilty, but it further shows he was sentenced to more than nine years in prison on the charge. Further, the judgment and commitment order clearly indicates that appellant was found guilty of the charge.

Because we find no merit in appellant's arguments, we affirm.