Joe Francis ROUNSAVILLE *v.* STATE of Arkansas

CR 07-75                                    273 S.W.3d 486

Supreme Court of Arkansas
Opinion delivered January 31, 2008

*Richard L. Hughes* and *Craig Lambert*, for appellant.

*Dustin McDaniel*, Att'y Gen., by: *Deborah Nolan Gore*, Ass't Att'y Gen., for appellee.

PAUL DANIELSON, Justice. Appellant Joe Rounsaville appeals from his convictions of rape, a Class Y felony, kidnapping, a Class B felony, and third-degree domestic battery. He

asserts two points on appeal: (1) the evidence was insufficient to support his convictions for kidnapping and third-degree domestic battery because the amount of restraint or force allegedly used was de minimis, and (2) the circuit court erred in denying his motion to present evidence of prior consensual "bondage" activity between himself and the victim, Kathleen Tucker. The appellant's arguments are not preserved for our review. We therefore affirm.

A review of the record reveals the following facts. In December 2005, Kathleen Tucker moved into Rounsaville's home after she lost her job and became unable to afford the rent and bills at her own residence. On December 14, 2005, an argument ensued between Tucker and Rounsaville. According to Tucker's testimony, Rounsaville had been requesting sex and informed her that if she refused, she would have to move out. Tucker began to gather her things; however, she remained at Rounsaville's residence that evening because she did not know where else to go and also realized she was required to meet with her probation officer the next morning. Before going to sleep, she attempted to barricade herself in her bedroom with a chair and a heavy box. Around 11:00 that evening, Rounsaville forced the door to Tucker's bedroom open and began to hit her in the head while yelling profanities at her.

Rounsaville followed Tucker to the kitchen and the living room after she attempted to get away from him. He pushed her, and she fell over the side of the couch. Rounsaville then put his penis in Tucker's face and told her to suck it. When she refused, he began to hit her repeatedly in the head. While Tucker was on the floor, Rounsaville pinned her down and bound her hands behind her back with a zip tie. He then dragged Tucker around the house, allowing her body to bump into walls and doorways.

After Rounsaville had dragged her into her bedroom, he ripped off her tank top and picked up a knife. Rounsaville pointed the knife at Tucker's breasts and asked her which one she wanted to have him cut off. He then dragged her to his bedroom, placed her on her stomach on the bed, and proceeded to have anal sex with her, causing her great pain. He ignored her pleas for him to stop and repeatedly struck her in the head. When Rounsaville finished, he left the room and left Tucker on the bed, still bound by her hands. He returned a few minutes later and allowed her to use the bathroom, but only in his presence. Rounsaville also unbound her at that time.

Tucker attempted to put her clothes back on, but Rounsaville got on top of her on the bed and tied a necktie around her neck. He pulled the tie tight to the point at which Tucker could not breathe and placed a pillow over her face, stating, "you wanted to die. I'm going to help you." After removing the pillow from her face, he took her to the shower where he urinated on her. Tucker went into the living room and wrapped herself in a blanket on the couch. A short time later, Rounsaville returned and told her he was going to have sex with her again. She refused; however, he crawled on top of her and proceeded to have sex with her. In the course of Rounsaville having sex with her, she bit his arm and, in response, he struck her in the head.

Rounsaville instructed Tucker to sit in the living room, where he also remained, turned on a movie, and fell asleep. Tucker sat awake until around 7:00 the next morning, when Rounsaville awoke and went into his bedroom. At that time, she also left the living room and went to her bedroom to sleep for about an hour and get ready for the appointment with her probation officer.

Tucker's probation officer, Melinda Perkins, was concerned about the noticeable injuries Tucker had sustained. The injuries that Perkins saw included Tucker's cut lip, bruising on her face, shoulders, arms, and thighs, and bruising and indentation marks on her wrists. Tucker's head, arm, and bottom hurt, and she finally told Perkins what had happened to her, but refrained from telling her who did it. Perkins called the Jacksonville Police Department and took Tucker to the hospital. In a subsequent search of Rounsaville's residence, police found a zip tie, a necktie, and Tucker's torn tank top in his garbage.

After a couple of weeks, Tucker could not find a place to stay after seeking help from her ex-husband and her family. She called Rounsaville and asked if they could talk. Tucker believed he was sorry for his actions and lived with him again. She told Rounsaville she would not pursue the charges pending against him. However, Rounsaville insisted that if she was going to stay with him, she had to write a letter to the prosecutor stating that he did not rape or assault her.

Tucker wrote the first letter to the prosecutor, dated January 15, 2006, simply stating that she did not want any charges filed against Rounsaville, or, alternatively, wanted any charges already pending to be dropped. However, Rounsaville was not satisfied with that letter and made her write a second letter, dated January

17, 2006, stating that she was never assaulted or raped by Rounsaville. Tucker testified in court that the second letter was not true and that she only wrote it because Rounsaville insisted that she write the letter or leave his residence. A third letter was received by the detective in the case also stating that the accusations made by Tucker were false. It appeared to be a letter from Tucker, but she testified in the circuit court that she did not write, sign, or send the letter and that the handwriting was Rounsaville's.

After a jury trial, Rounsaville was convicted of rape, kidnapping, and third-degree battery. He filed a timely notice of appeal on October 25, 2006, which led to the appeal currently before us.

Rounsaville first challenges the sufficiency of the evidence convicting him of both kidnapping and third-degree battery in addition to rape. He contends that the record reflects that the restraint involved in the instant case was no more than was necessary to consummate the sexual act for which he was convicted of rape. Therefore, Rounsaville argues the convictions for kidnapping and battery must be reversed and dismissed.

First, the State responds by asserting that Rounsaville failed to make these arguments to the circuit court, thereby failing to preserve them for appeal. Alternatively, the State avers that substantial evidence indeed supports his convictions.

Our standard of review for a sufficiency challenge is well settled. In reviewing a challenge to the sufficiency of the evidence, we view the evidence in a light most favorable to the State and consider only the evidence that supports the verdict. *See Cluck v. State*, 365 Ark. 166, 226 S.W.3d 780 (2006). We affirm a conviction if substantial evidence exists to support it. *See id.* Substantial evidence is that which is of sufficient force and character that it will, with reasonable certainty, compel a conclusion one way or the other, without resorting to speculation or conjecture. *See id.*

Furthermore, circumstantial evidence may provide a basis to support a conviction, but it must be consistent with the defendant's guilt and inconsistent with any other reasonable conclusion. *See id.* Whether the evidence excludes every other hypothesis is left to the jury to decide. *See id.* The credibility of witnesses is an issue for the jury and not the court. *See id.* The trier of fact is free to believe all or part of any witness's testimony and may resolve questions of conflicting testimony and inconsistent evidence. *See id.*

Rounsaville, quoting *Summerlin v. State*, 296 Ark. 347, 756 S.W.2d 908 (1988), specifically argues that "[t]he exclusion of de minimis restraints from the definition of kidnapping is desirable since offenses such as rape or robbery necessarily contemplate restrictions on the victim's liberty while the crime is actually committed. Thus, it is only when the restraint exceeds that normally incidental to the crime that the rapist (or robber) should also be subject to prosecution for kidnapping." Rounsaville contends that the same reasoning must also be applied to the conviction of domestic battery, as he alleges that physical injury is incidental to the crime of rape; however, he fails to support that argument with legal authority.

We do not reach the merits of Rounsaville's argument, as we agree with the State that it is not preserved for appellate review. Rounsaville moved for directed verdict, making the following argument regarding the charges of kidnapping and battery:

> I would move that a directed verdict be given, that I don't believe that Ms. Tucker left. She was free to leave at any time, that the State has not made a prima facia case that she was kidnapped or on the battery third, I would move for a directed verdict that the State has not made a prima facia case that Joe Rounsaville was the one that battered her.

Rounsaville did not raise any additional issues in his directed-verdict motion at the close of his case, but simply renewed his previous motion. On appeal he has changed his argument, and argues for the first time that the amount of restraint or force used does not warrant a kidnapping conviction and a third-degree battery conviction in addition to the conviction of rape.

■ A directed-verdict motion is a challenge to the sufficiency of the evidence and requires the movant to apprise the circuit court of the specific basis on which the motion is made. *See, e.g., Campbell v. State*, 319 Ark. 332, 891 S.W.2d 55 (1995). Arguments not raised at trial will not be addressed for the first time on appeal, and parties cannot change the grounds for an objection on appeal, but are bound by the scope and nature of the objections and arguments presented at trial. *See id.* Rounsaville's arguments were not part of his directed-verdict motion in the circuit court. Consequently, these arguments are not preserved for our review.

For his second point on appeal, Rounsaville argues that the circuit court erred in finding that evidence that he and Tucker had

once before engaged in "bondage" activity was encompassed by the rape-shield statute. He first argues that "prior consensual bondage activity" is not covered by the rape-shield statute because it is not prior sexual conduct as defined by the statute and that it was critical to Rounsaville's defense as the bondage was the same type that occurred during the incident for which he was convicted of rape, kidnapping, and battery. Second, Rounsaville claims that because of this exclusion, he was precluded from presenting a defense in violation of his constitutional rights as guaranteed by the Sixth and Fourteenth Amendments to the U.S. Constitution.

The State again avers that Rounsaville's arguments are not preserved for our review as he did not argue the same at the circuit court. Furthermore, the State contends that his first argument clearly ignores the record, in which the victim clearly and unambiguously confirmed that the prior conduct Rounsaville wished to introduce was "sex in which bondage was involved." Regarding his constitutional arguments, the State argues that even if no procedural bar applies, they must fail as he was able to present a defense, simply not the defense he wanted to due to the exclusion.

The rape-shield statute, Ark. Code Ann. § 16-14-101 (Repl.1999), was enacted with the purpose of protecting victims of rape or sexual abuse from the humiliation of having their personal conduct, unrelated to the charges pending, paraded before the jury and the public when such conduct is irrelevant to the defendant's guilt. *See Parish v. State*, 357 Ark. 260, 163 S.W.3d 843 (2004). Section 16-42-101(b) provides that in a criminal prosecution for a sex crime the following evidence is not admissible:

> [O]pinion evidence, reputation evidence, or evidence of specific instances of the victim's prior sexual conduct with the defendant or any other person, evidence of a victim's prior allegations of sexual conduct with the defendant or any other person, which allegations the victim asserts to be true, or evidence offered by the defendant concerning prior allegations of sexual conduct by the victim with the defendant or any other person if the victim denies making the allegations is not admissible by the defendant, either through direct examination of any defense witness or through cross-examination of the victim or other prosecution witness, to attack the credibility of the victim, to prove consent or any other defense, or for any other purpose.

Ark. Code Ann. § 16-42-101(b). A defendant may, however, file a rape-shield motion under subsection 16-42-101(c) requesting that the

circuit court make a determination as to the admissibility of the proposed evidence. *See* Ark. Code Ann. § 16-42-101(c). Upon holding a hearing, if the circuit court determines that the offered proof is relevant to a fact in issue, "and that its probative value outweighs its inflammatory or prejudicial nature," the circuit court may grant the defendant's motion to admit the evidence. *See* Ark. Code Ann. § 16-42-101(c)(2)(C).

The circuit court is vested with a great deal of discretion in ruling whether the evidence is relevant. *See Harris v. State*, 322 Ark. 167, 907 S.W.2d 729 (1995). This court will not reverse the circuit court's decision as to the admissibility of rape-shield evidence unless its ruling constituted clear error or a manifest abuse of discretion. *See Parish v. State, supra.*

■ We first address the State's preservation argument. We agree that Rounsaville argues for the first time on appeal that the prior bondage activity was not sexual conduct covered by the statute. At the hearing on his rape-shield motion, Rounsaville argued that he was trying to get evidence admitted that he and Tucker had engaged in "rough sex before." Rounsaville argued specifically at the hearing that the evidence was relevant to his defense and was "more highly probative and goes to the credibility or the consent [of the victim]." As previously noted, arguments not raised at trial will not be addressed on appeal, and parties cannot change their grounds for an objection on appeal. *See Campbell v. State, supra.*

■ As for Rounsaville's constitutional arguments, they were also not raised at the hearing on his rape-shield motion. While Rounsaville did include them in his written motion, he failed to get a ruling on the constitutional issues at the hearing, at which the circuit court carefully considered each issue one at a time and gave a ruling. In *Eastin v. State*, 370 Ark. 10, 16-17, 257 S.W.3d 58, 63-64 (2007), this court discussed when multiple arguments are presented by a motion:

> It is the appellant's burden to present a case before the trial court that fully and completely develops all the issues. *See Raymond v. State*, 354 Ark. 157, 118 S.W.3d 567 (2003); *Walker v. State*, 314 Ark. 628, 864 S.W.2d 230 (1993). Moreover, it is the appellant's burden to obtain a clear ruling on an issue from the trial court. *Misskelley v. State*, 323 Ark. 449, 915 S.W.2d 702, *cert. denied*, 519 U.S. 898, 117 S. Ct. 246, 136 L.Ed.2d 174 (1996); *Bowen v. State*, 322 Ark. 483,

911 S.W.2d 555 (1995), *cert. denied*, 517 U.S. 1226, 116 S. Ct. 1861, 134 L.Ed.2d 960 (1996). In both *Misskelley* and *Bowen*, the appellants raised multiple arguments in their motions to suppress. This court refused to reach the merits of those arguments that were not specifically ruled upon by the trial court in denying the motions.

Here, the issues regarding the delay in being brought before a judicial officer were raised by Appellant in his written motion to suppress. However, they were not developed, either factually or legally, during the hearing on the motion. To the contrary, the record of the hearing demonstrates that Appellant abandoned these arguments in favor of pursuing the issue of his alleged pretextual arrest. Moreover, the record demonstrates that Appellant did not obtain clear rulings on these issues.

*Eastin, supra* (citing *Romes v. State*, 356 Ark. 26, 46, 144 S.W.3d 750, 763-64 (2004)). In the instant case, appellant abandoned his constitutional arguments at the hearing on his rape-shield motion, and we hold they are also not preserved for our review.

Affirmed.