2009 Ark. 521

**Shannon David RAY, Appellant,**

v.

**STATE of Arkansas, Appellee.**

**No. CR 09–99.**

Supreme Court of Arkansas.

Oct. 29, 2009.

Dyer and Jones, by: F. Parker Jones III, for appellant.

Dustin McDaniel, Att'y Gen., by: Kathryn Henry, Ass't Att'y Gen., for appellee.

ROBERT L. BROWN, Justice.

Appellant Shannon David Ray appeals from his convictions for two counts of aggravated robbery, four counts of aggravated assault, attempted murder, possession of a firearm by certain persons, and discharge of a firearm from a car and his sentence of life in prison as a habitual offender. He asserts five points on appeal. We affirm.

On March 23, 2007, at around 3:30 p.m., Shannon Ray and Brooke Robinson decided to rob the Hibbett Sports sporting-goods store in Arkadelphia. Robinson waited outside in a running car, while Ray went into the store and pretended to shop for clothing. After picking out several items of merchandise with the help of store employees, Ray stated that he needed to get his debit card from his car and left the store. He returned several minutes later with a sawed-off shotgun and said to James Richards, the store's assistant manager: "You already know what it is. This is a robbery." Ray then gathered up the store's customers at gunpoint and ordered them to lie down in front of the counter.

After everyone was on the ground, Ray ordered Richards to put the merchandise he had picked out into bags. While Richards was complying, other people, including Richards's wife and five-month-old son, entered the store. Ray forced the newcomers to lie down with the rest of the store's customers and said: "There's a baby in the store. I don't want to hurt no one, but I will for my life." When Richards had finished placing the merchandise into bags, Ray made Richards empty the money from the cash register into another bag. Ray also ordered the customers on the ground to place their wallets and money on the ground. Ray gathered up his loot and left the store.

Jennifer Haley, the store manager, was in the back of the store when Ray came in the second time. When she realized that Ray was robbing the store, she slipped out the back door and went to the neighboring store in the strip mall, Rent–A–Center, to call the police. There, Haley and Brandon McKim, a Rent–A–Center employee, saw Ray walk in front of the Rent–A–Center's front window. When Haley confirmed that Ray was the man who had robbed Hibbett Sports, McKim left the Rent–A–Center and chased after Ray. When Ray noticed McKim chasing after him, he ran around the corner of the building to where Robinson was waiting with the getaway car. Ray got in the car, and the car pulled around the corner and stopped in front of McKim who was, at that point, standing in front of a Chinese food restaurant that was also in the strip mall. Ray pointed the shotgun out the window of the car and fired at McKim. The shotgun blast missed McKim but shattered the glass door of the Chinese restaurant. The car then sped off. Shortly after the robbery, Ray and

Robinson were stopped by the police on Interstate 30 and arrested.

The car Robinson was driving was transported to the Arkadelphia Police Department's evidence garage. There, in the course of an inventory search of the vehicle, police discovered evidence of the robbery in the vehicle's trunk. This evidence included, among other things, a sawed-off shotgun and three Hibbett Sports bags containing merchandise and cash. Prior to trial, Ray moved to suppress the evidence recovered from the trunk of the vehicle and asserted that the police had failed to follow the necessary guidelines for inventory searches and that the search had been conducted without his consent. A hearing was held on the motion, and the motion was denied.

Ray was tried by a jury on August 27, 2008, and convicted and sentenced as is already set out in this opinion.

On appeal, Ray first challenges the sufficiency of the evidence with regard to his convictions for aggravated robbery and aggravated assault. He notes that two persons, Cedrick Kousok and James Richards, were the alleged victims of both aggravated assault and aggravated robbery. He appears to contend that because the crimes of aggravated robbery and aggravated assault require proof of different conduct, the same person cannot be a victim of both crimes based on the same course of conduct by the defendant.

Before considering the merits of this point on appeal, we must first determine whether the issue was properly preserved for appellate review. *Maxwell v. State*, 359 Ark. 335, 197 S.W.3d 442 (2004). This court treats a motion for directed verdict on appeal as a challenge to the sufficiency of the evidence. *Ward v. State*, 370 Ark. 398, 260 S.W.3d 292 (2007). A challenge to the sufficiency of the evidence is preserved by making a specific motion

for directed verdict at both the conclusion of the State's case and at the conclusion of all of the evidence. Ark. R.Crim. P. 33.1 (2008). Arguments made in support of a sufficiency-of-the-evidence challenge that were not made in support of a motion for directed verdict at trial are not preserved for appeal. *See, e.g., Rounsaville v. State*, 372 Ark. 252, 273 S.W.3d 486 (2008); *Phillips v. State*, 361 Ark. 1, 203 S.W.3d 630 (2005). It is well settled that arguments not raised at trial will not be addressed for the first time on appeal. *See, e.g., Campbell v. State*, 319 Ark. 332, 891 S.W.2d 55 (1995).

At the close of the State's evidence, Ray's counsel moved for a directed verdict, arguing the following with respect to the charges of aggravated assault and aggravated robbery:

All right, count I, aggravated robbery, challenge the sufficiency of the evidence that he inflicted or attempted to inflict death or serious physical injury upon another person, in respect to any of the people who lost property. So I believe they failed to meet the burden on that one.

. . . .

In respect to the aggravated assault, we assert that they failed to—we challenge the sufficiency of the evidence in respect to the elements by Arkansas Code Annotated 5-13-204. There's multiple charges of aggravated assault and aggravated robbery. I believe I've already covered aggravated robbery. They did not identify a victim for each of these charges, each of these counts. And for each of these counts, and I'm speaking to all the counts that he's charged with, if they failed to identify a victim, they must necessarily fail.

Ray renewed this motion for directed verdict at the close of all of the evidence without raising any additional issues.

■ What is clear to this court is that at trial, Ray raised a general challenge to the sufficiency of the evidence with regard to the aggravated-robbery charges and a specific challenge that the State had failed to identify victims with respect to the aggravated-assault charges. On appeal, however, he claims that a person cannot be a victim of both aggravated robbery and aggravated assault, based on the same conduct of the defendant. This argument was not presented to the circuit judge in support of the motion for directed verdict. Accordingly, it has not been preserved for this court's review.[1] *See, e.g., Rounsaville,* 372 Ark. at 256, 273 S.W.3d at 490.

For his second point, Ray asserts that the circuit judge erred by denying his motion to suppress the pretrial identifications of him by six witnesses because the photographic lineups were unduly suggestive and violated his due-process rights. Ray further claims that the suggestive pretrial identifications tainted any subsequent identifications of him at trial. Specifically, he contends that the pretrial identifications were unduly suggestive because Ray was taken to the crime scene in the back of a police car on the day of the robbery where one or more witnesses saw him and because one other witness knew another man included in the photographic lineup with Ray.

To prove suggestiveness, Ray called two witnesses, James and Michelle Richards, to the stand at the pretrial hearing on his motion to suppress. James Richards testified that he saw Ray in the back of a police car in front of Hibbett Sports after the robbery. He stated that the police car was parked in front of Hibbett Sports for about a minute before driving away. According to Richards, Ray was in the store for fifteen to twenty minutes during the robbery. Five days after the robbery, Richards identified Ray in a photographic lineup without any reluctancy or hesitancy. He stated that he recognized Ray immediately and would have recognized him regardless of the fact that he had seen him briefly in the back of the police car after the robbery.

Michelle Richards testified that she had heard that police officers had brought Ray back to the store after the robbery but that she had not seen it herself. She stated that she participated in a photographic lineup five days after the robbery and that she recognized two people in the lineup, Ray and a former high school classmate. She added that she was absolutely sure that Ray was the person she saw in Hibbett Sports. At the conclusion of the hearing, the circuit judge made the following ruling:

1. Ray also moved to dismiss the charges against him *after* the jury returned its verdict. In support of his motion to dismiss, Ray argued, among other things, that the aggravated-assault charges were lesser-included offenses of the aggravated robbery charges under Ark.Code Ann. § 5–1–110(a)(1) and that Ark.Code Ann. § 5–1–110(a)(5) prohibited both charges because his conduct constituted an offense defined as a continuing course of conduct and his course of conduct was uninterrupted. To the extent that this argument is similar to the argument Ray now raises on appeal, he still has not preserved his argument on appeal. Arkansas

Rule of Criminal Procedure 33.1(a) provides that a motion for directed verdict must be made at the close of the evidence offered by the State and at the close of all of the evidence. A motion or argument made at any other time fails to preserve a sufficiency challenge for appellate review. *See* Ark. R.Crim. P. 33.1(c) ("The failure of a defendant to challenge the sufficiency of the evidence at the times and in the manner required in subsections (a) and (b) above will constitute a waiver of any question pertaining to the sufficiency of the evidence to support the verdict or judgment.").

Based upon the testimony, Mr. Richards was in the store. The defendant came in on 2 different occasions. He said he observed him from 10 to 20 minutes. That he had a big band-aid on his neck, and 5 days later, he saw a photo lineup. At the store, Ms. Richards didn't see the defendant in the police car at Hibbett's, and I'm going to deny the defense's motion to suppress the lineup.

At trial, at least six witnesses, including the Richardses, identified Ray. For each of these witnesses, the State additionally offered into evidence the fact that they had identified Ray in a pretrial photographic lineup. Ray's attorney objected to each in-court identification and the introduction of each pretrial identification.

■ This court has held that a pretrial identification violates the Due Process Clause when there are suggestive elements in the identification procedure that make it all but inevitable that the victim will identify one person as the culprit. *Mezquita v. State,* 354 Ark. 433, 125 S.W.3d 161 (2003). But, even when the process is suggestive, the circuit judge may determine that under the totality of the circumstances, the identification was sufficiently reliable for the matter to be decided by the jury. *Fields v. State,* 349 Ark. 122, 76 S.W.3d 868 (2002) (citing *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972)).

■ In determining the reliability of an identification, we consider the following factors: (1) the prior opportunity of the witness to observe the alleged act; (2) the accuracy of the prior description of the accused; (3) any identification of another person prior to the pretrial identification procedure; (4) the level of certainty demonstrated at the confrontation; (5) the failure of the witness to identify the defendant on a prior occasion; and (6) the lapse of time between the alleged act and the pretrial identification procedure. *E.g., Van Pelt v. State,* 306 Ark. 624, 816 S.W.2d 607 (1991).

■ When, as here, the photographic identification is followed by an eyewitness identification at trial, this court will not set aside the conviction unless the photographic lineup was so suggestive as to create a substantial possibility of misidentification. *E.g., Fields,* 349 Ark. at 127, 76 S.W.3d at 872. It is the appellant's burden to show that a pretrial identification was suspect, and this court will not reverse a circuit judge's ruling on the reliability of an identification unless it is clearly erroneous. *Chism v. State,* 312 Ark. 559, 853 S.W.2d 255 (1993).

■ We conclude that Ray did not meet his burden of showing that the pretrial identification procedure was unduly suggestive. He first argues that the photographic lineup was unduly suggestive with respect to Mrs. Richards because Ray's photograph was included with a photograph of an individual she knew from high school, thus, "suggesting who should not be identified." The inquiry, however, is whether the suggestive nature of the identification procedure makes it all but inevitable that the victim will identify one person as the culprit. *See Mezquita v. State,* 354 Ark. at 440, 125 S.W.3d at 165. The fact that a witness knows or recognizes one person out of a six-person lineup does not make it inevitable that she will choose one person out of the remaining five as the culprit.

Ray's second argument—that the police drove Ray past the store after his arrest thus making the pretrial identification "an exercise in remembering who was in the back of the police car"—is a credibility argument that has nothing to do with whether the actual photographic lineup was unduly suggestive. *See Travis v.*

*State*, 328 Ark. 442, 944 S.W.2d 96 (1997) (appellant's argument that the victim's identification was unreliable because she may have obtained a physical description of him in a manner other than from actually seeing him during the commission of the crime was a credibility argument having nothing to do with the suggestiveness of a pretrial photographic lineup).

We further note that Ray has failed to point to any circumstances that show that the pretrial identification procedure was unduly suggestive with regard to the four other witnesses, besides Mr. and Mrs. Richards, who identified Ray both in and out of the courtroom. All four of these other witnesses testified at trial that they had not seen Ray in the back of the police car following the robbery.

Because we hold that the pretrial identification procedure was not unduly suggestive, we need not explore the issue of whether the identifications were reliable under the totality of the circumstances. We affirm on this point.

Ray next claims that the circuit judge erred by denying his motion to suppress evidence of the robbery that was seized from the car in which he was a passenger after the robbery. Following a hearing on the motion to suppress, the circuit judge ruled that Ray lacked standing to challenge the search of the automobile. Ray now urges that the circuit judge's ruling was error because he had a legitimate expectation of privacy in the vehicle searched.

It is well settled that an appellant must have standing to challenge a search on Fourth Amendment grounds because the rights secured by the Fourth Amendment are personal in nature. *See Littlepage v. State*, 314 Ark. 361, 863 S.W.2d 276 (1993) (citing *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978)). Whether an appellant has stand-ing depends on whether he or she manifested a subjective expectation of privacy in the area searched and whether society is prepared to recognize that expectation as reasonable. *Id.* (citing *United States v. Erwin*, 875 F.2d 268 (10th Cir.1989)). The proponent of a motion to suppress bears the burden of establishing that his or her Fourth Amendment rights have been violated. *McCoy v. State*, 325 Ark. 155, 925 S.W.2d 391 (1996).

This court has repeatedly held that a defendant has no standing to challenge the search of a vehicle owned by another person unless he can show that he gained possession of the vehicle from the owner or from someone who had authority to grant possession. *E.g., Stokes v. State*, 375 Ark. 394, 291 S.W.3d 155 (2009); *Stanley v. State*, 330 Ark. 642, 956 S.W.2d 170 (1997); *State v. Barter*, 310 Ark. 94, 833 S.W.2d 372 (1992). At the suppression hearing, Ray testified that Robinson had given him permission to drive the vehicle in the past; that he could use the vehicle "pretty much" any time he wanted, though he did not have a key to the vehicle; and that he frequently drove the vehicle to run errands. It is undisputed, though, that Robinson's father owned the vehicle that was stopped by police and that Ray was only a passenger in the vehicle at the time it was stopped.

The facts illustrate that Ray was not in possession of the vehicle at the time it was stopped. Plus, he failed to show that Robinson had the authority to grant him possession of the vehicle or that she had, in fact, given him possession of the vehicle. He further admitted that Robinson's father, the actual owner of the car, had never given him permission to drive the vehicle. In short, Ray had neither a property interest in the vehicle nor a possessory one. Thus, he had no legitimate expec-

tation of privacy in the vehicle and no standing to challenge the search. *See Simpson v. State,* 339 Ark. 467, 6 S.W.3d 104 (1999); *Stanley,* 330 Ark. at 644, 956 S.W.2d at 171; *Koonce v. State,* 269 Ark. 96, 598 S.W.2d 741 (1980). We affirm on this point as well.

Ray additionally maintains that the circuit judge erred by denying his motion to suppress statements he made to police on March 24, 2007. The record, however, reflects that the State never introduced Ray's statements into evidence at trial. This court has made it clear that it will not reverse a circuit judge's ruling denying the suppression of a statement where that statement was not used against the appellant at trial because in such cases the appellant cannot demonstrate prejudice. *See Ferguson v. State,* 343 Ark. 159, 33 S.W.3d 115 (2000); *Simpson v. State,* 339 Ark. 467, 6 S.W.3d 104 (1999); *Hayes v. State,* 274 Ark. 440, 625 S.W.2d 498 (1981). Because Ray's statements were not offered against him at trial, he cannot demonstrate prejudice. This point has no merit.

For his final point, Ray claims that the circuit judge erred by ruling that the "pen pack" offered by the State was sufficient to prove his two prior Tennessee convictions for purposes of enhanced sentencing as a habitual offender under Arkansas Code Annotated section 5–4–504. Following the jury's verdict finding Ray guilty of all charges, the State moved to enhance his sentence on the aggravated-robbery convictions under Arkansas Code Annotated section 5–4–501(d), alleging that Ray had previously been convicted of two counts of aggravated robbery in Tennessee.

As a means of proving Ray's prior convictions, the State offered into evidence a "pen pack" from the Tennessee Department of Correction. This pen pack con-

tained numerous records from the Tennessee Department of Correction, including Ray's fingerprints and head shots, and evidenced that Ray had been convicted of two counts of aggravated robbery in 2001. The records additionally showed that Ray had been represented by counsel for both convictions. Also included in the pen pack was a document of certification from the Tennessee Department of Correction's Institutional Inmate Records Clerk, which was authenticated by a notary public and which certified that the attached records were "full, true and correct" copies of the original files and records of Shannon David Ray "a person heretofore committed to the Tennessee Department of Correction."

Ray objected to the State's use of the pen pack to prove his prior convictions, and contended that the pen pack was improperly authenticated, that it was improperly certified, that the State had failed to lay a proper foundation for its introduction, and that its introduction violated his rights under the Confrontation Clause of the Sixth Amendment. The circuit judge allowed the State to introduce the pen pack and found that it was certified by a warden or chief officer of a correctional institution of the State of Tennessee and in compliance with section 5–4–504.

On appeal, Ray now argues that the circuit judge erred by allowing the State to introduce the pen pack to prove his prior convictions because the pen pack did not meet the requirements of Arkansas Code Annotated section 5–4–504. In particular, Ray asserts that the circuit judge erred because the pen pack's document of certification was signed by a clerk and not "the warden or other chief officer of a correctional institute," which he claims was required under section 5–4–504(b)(2). Ray also takes issue with the document of certification itself, claiming that it is unclear

which document it is, in fact, certifying. He argues that the document of certification does not identify any of the "attached documents" and that the State may have added or removed documents attached to the certificate.

We first observe that the State has the burden of proving a defendant's prior convictions for purposes of enhanced sentencing under the habitual-offender statute. *Williams v. State*, 304 Ark. 279, 801 S.W.2d 296 (1990). The method of proving a defendant's previous convictions is set forth in Arkansas Code Annotated section 5–4–504:

(a) A previous conviction or finding of guilt of a felony may be proved by any evidence that satisfies the trial court beyond a reasonable doubt that the defendant was convicted or found guilty.

(b) Any of the following are sufficient to support a finding of a prior conviction or finding of guilt:

(1) A certified copy of the record of a previous conviction or finding of guilt by a court of record;

(2) A certificate of the warden or other chief officer of a correctional institution of this state or of another jurisdiction, containing the name and fingerprints of the defendant as the name and fingerprints appear in the records of the warden's or other chief officer's office; or

(3) A certificate of the chief custodian of the records of the United States Department of Justice, containing the name and fingerprints of the defendant as the name and fingerprints appear in the records of the chief custodian's office.

Subsection (a) of this statute specifically permits the proof of a defendant's prior conviction to be by *any evidence* that satisfies the circuit judge beyond a reasonable doubt that the defendant has, in fact, previously been convicted of the felonies alleged. *E.g., Mulkey v. State*, 330 Ark. 113, 952 S.W.2d 149 (1997); *Williams*, 304 Ark. at 284, 801 S.W.2d at 299. The test on appeal is whether there is substantial evidence that the appellant was convicted of the felonies in question. *Williams*, 304 Ark. at 284, 801 S.W.2d at 299.

Ray's first argument on this point, that the circuit judge erred by finding that the pen pack was certified by a warden or chief officer of a correctional institution, was not raised before the circuit judge. This court has repeatedly stated that it will not consider arguments raised for the first time on appeal. *E.g., Robertson v. State*, 2009 Ark. 430, 347 S.W.3d 460. We will not do so in the instant case.

Moreover, a Tennessee records clerk certified the pen pack, and Ray did not offer any proof to the circuit judge that the certified items presented did not correctly reflect the judgments in the Tennessee cases in which he was convicted for aggravated robbery. *Mulkey*, 330 Ark. at 120, 952 S.W.2d at 153; *Daniels v. State*, 322 Ark. 367, 908 S.W.2d 638 (1995); *Heard v. State*, 316 Ark. 731, 876 S.W.2d 231 (1994). Without question, the circuit judge believed that Ray had been convicted of the two offenses in Tennessee. We conclude that the pen pack constituted substantial evidence that Ray was convicted of the two previous felonies in question. *See Williams*, 304 Ark. at 284, 801 S.W.2d at 299. We affirm on this point.

The record has been reviewed in accordance with Arkansas Supreme Court Rule 4–3(i), and no reversible error has been found.

Affirmed.