SLIP OPINION

Cite as 2015 Ark. App. 418

# ARKANSAS COURT OF APPEALS

DIVISION IV
No. CR–14–997

| | | |
|---|---|---|
| | | **OPINION DELIVERED** AUGUST 26, 2015 |
| CLAUDE SMITH | | APPEAL FROM THE PULASKI |
| | APPELLANT | COUNTY CIRCUIT COURT, FIRST DIVISION |
| | | [NO. CR-13-1283] |
| V. | | |
| | | HONORABLE JAMES LEON JOHNSON, JUDGE |
| STATE OF ARKANSAS | | |
| | APPELLEE | AFFIRMED |

**ROBERT J. GLADWIN, Chief Judge**

Claude Smith was convicted after a jury trial in the Pulaski County Circuit Court of violating Arkansas Code Annotated section 27-53-103 (Repl. 2010), by failing to immediately stop or remain at the scene after hitting Lois Sandusky with his truck in a crosswalk. He was also convicted of three misdemeanors for the following violations of Arkansas Code Annotated: (1) section 5-65-105 (Repl. 2005), operating a vehicle when his license was suspended for driving while intoxicated; (2) section 27-22-104 (Repl. 2014), driving a motor vehicle without proof of insurance; and (3) section 27-51-1202(a) (Repl. 2010), failing to yield to a pedestrian. On appeal, he challenges both the pretrial and in-court identifications provided by both the victim and an eyewitness. We affirm.

Smith filed motions to suppress in-court identifications and photo lineups as to both Payne Colton, an eyewitness to the accident, and Sandusky, and a pretrial hearing was held.

Stan Harmon, a hit-and-run investigator with the Little Rock Police Department, testified that the reported vehicle that struck Sandusky on January 6, 2013, was a white Ford pickup. He said that Sandusky had been walking in a crosswalk, eastbound on Beechwood Street, when she was struck by the truck, and she was taken to the hospital due to her injuries. Officer Harmon became involved a week after the accident, and he said that surveillance cameras from Kroger and Junk Antiques provided video and still photographs of the white Ford pickup. However, this evidence was not initially obtained during the investigation.

Harmon said that Colton described the truck's license plate as having number "AAEF," that it was an Arkansas tag, and that it was a military-style plate. He said that, based on that information, Officer David Phillips requested from the Arkansas Crime Information Center (ACIC) all military tags that had the series "AAEF," thus narrowing the search to "US AAEF." One tag with that description was retrieved, and it belonged to Steven Kissinger from Searcy, Arkansas.

Harmon explained that, at the time they began investigating Kissinger, they did not have the video evidence from the Kroger or the still photo from the antique store. He was made aware that Sandusky and Colton identified Kissinger as the driver, and an affidavit of arrest was prepared. Harmon said that Kissinger had an alibi, and after looking at the surveillance video, it was determined that Kissinger's truck was not the truck in the pictures. The charges against Kissinger were nolle prossed, and the officers continued their investigation.

Harmon said that they requested a new ACIC list for all tags in Arkansas that had the

"AAEF" sequence. Only seventeen tags contained that sequence, and of those, only one belonged to a Ford F150 pickup, which had a Cattleman's Federation-style tag on it with the letters "AAEF." This was the type of truck shown on the video, and the truck was registered to Smith.

Harmon said that Smith's photograph was placed in a photo spread and presented to both Sandusky and Colton on January 30 and 31, 2013. Harmon explained that in order to put together a photo spread, police use a database from all Arkansas drivers' licenses. He said that they try to use pictures of people with the same skin tones and as close to the same hair color and build as possible. He and Officer Phillips assembled the photo spread that was presented to the witnesses. He said that the accident report contained a description of the driver as a white male, fifty to fifty-five years of age, Caucasian, clean-cut hair, full facial hair, and possibly wearing glasses.

The officers recorded the interview of Sandusky at her home when she identified Smith after she was told that Kissinger was not the person driving the truck that had hit her. When the photo spread was presented to Sandusky, Harmon did not indicate that the suspect was in the spread, nor did he advise her that she had to pick someone from the spread. He stated that Sandusky picked Smith as the person who hit her that day, and he said that her identification was freely and voluntarily made. She told Harmon that she was positive that Smith was the person who had hit her. The next day, Colton was interviewed at the police department, and Harmon and Phillips recorded the session. Colton was shown the same photo spread shown to Sandusky, and he selected Smith. Harmon said that he did not suggest

to Colton which photo to pick. He said that Colton gave a very good description of the vehicle, stating that it was a 2007 Ford F150. Harmon testified that the suspect vehicle was in fact a 2007 Ford F150. Harmon concluded that there was never a time that Smith's photo was shown to either Sandusky or Colton that they failed to identify him.

Harmon described the investigation of Smith following the positive identification by both witnesses. Smith lived on the corner of the state Capitol complex, so they obtained surveillance video for January 6, 2013, which showed a white Ford F150 truck leaving the grounds before the accident, heading west. He said that this would have put it in the Kavanaugh area at the appropriate time that the accident occurred, around 9:30 a.m. They then timed the drive from Smith's residence to the accident scene, compared it to the timestamp on the video, and discovered both took roughly eight minutes.

Smith's attorney gave police permission to look at Smith's truck on the apartment complex property. Harmon did not observe any damage on the truck, but stated that when hit at a low speed, a 100-pound woman would not always leave damage. Harmon also pulled phone records and found that the cell tower location used by Smith put him in different parts of Little Rock that day. His calls also led police to his girlfriend, Jewelette Taylor, who lived in Pleasant Valley. Taylor told Harmon that Smith tapped on her window around 10:00 a.m. on January 6, 2013, and they went to breakfast in her vehicle, then went to Smith's apartment. When they went back to her residence, Smith left in his truck and drove to Oklahoma for work. Harmon said that, at the time of the accident, Smith's license was suspended for a DWI.

Officer David Phillips testified and confirmed Harmon's testimony. He also stated that initially he had been sure that Kissinger was the driver and that Sandusky had told him that she had a frightened feeling when she saw Kissinger's picture. She had described the face of the driver as square. Phillips said that Colton was also fairly certain that Kissinger was the driver when he made the positive identification of him.

Payne Colton testified that he was twenty-one years old and a biology major at UALR. He was employed in establishments on Kavanaugh Boulevard and was sitting in his car before work when Sandusky was hit in the crosswalk. He saw her come off the front of the truck and go under the first wheel. He did not see the initial impact, as he was looking down at his phone. He heard the impact, and that was when he looked up. He saw the driver, only half of his face, and he identified Smith in the courtroom. He said that when the accident happened, "I got his face, I got his car, I have his license. I did as much as I could to help the situation." Colton stayed with Sandusky until the ambulance arrived.

He remembered picking out who he thought was the driver of the vehicle on January 9, 2013. He remembered having some pressure to pick someone at the first photo spread. He said when he was presented the second photo spread later in the month, there was no pressure when he picked Smith. He also identified Smith in the courtroom.

Lois Sandusky testified that she was walking home from Leo's Greek Castle on that Sunday morning when she was struck crossing Beechwood Street. She was able to see the driver's face, and she identified Smith in the courtroom. She remembered him by making an analogy to Fred Flintstone because of the square shape of his face and large head. She picked

SLIP OPINION

out Smith's picture from the photo spread without pressure or suggestion from anyone.

Officer Charles Starratt was the first officer on the scene of the accident, and he testified that Colton gave him a brief description of the driver. Colton described him as a white male, fifty to fifty-five years of age, white clean-cut hair, and a full facial beard, possibly with glasses. He said that Colton gave him the "military themed plate of the US AAEF."

The trial court denied the motions to suppress the identifications made by Sandusky and Colton. When the motion to suppress was renewed at the pretrial hearing, the trial court denied it again.

At the jury trial, after the State presented its case, Smith renewed his motion to suppress the identifications made by Sandusky and Colton, and the trial court denied the motion.[1] At the close of the evidence, the jury found Smith guilty on each count, and he was sentenced to a term of five years and four months. Smith filed a timely notice of appeal, and this appeal followed.

The Arkansas Supreme Court set forth our clearly erroneous standard of review regarding pretrial identification in *Ray v. State*, 2009 Ark. 521, at 7–8, 357 S.W.3d 872, 879,

---

[1]Arkansas Supreme Court Rule 4-2(a)(5)(B) (2014) provides that no more than one page of the transcript shall be abstracted without giving a record page reference. Smith's appellate brief contains abstracting errors under this rule, as he fails to cite the record for this renewed motion and fails to include the court's ruling. However, it was not necessary to renew the motion to suppress the identifications in order to preserve the issue for appeal. Also, there are several instances in the abstract where, without explanation, large portions of the record are not abstracted. For example, Smith does not cite the record from pp.1142 to 1164; pp. 1183 to 1192; pp. 1193 to 1204; or pp. 1205 to 1249. Because this court is able to confirm its jurisdiction, understand the case, and decide the issues on appeal despite the shortcomings in Smith's abstract, we do not require rebriefing.

as follows:

> This court has held that a pretrial identification violates the Due Process Clause when there are suggestive elements in the identification procedure that make it all but inevitable that the victim will identify one person as the culprit. *Mezquita v. State*, 354 Ark. 433, 125 S.W.3d 161 (2003). But, even when the process is suggestive, the circuit judge may determine that under the totality of the circumstances, the identification was sufficiently reliable for the matter to be decided by the jury. *Fields v. State*, 349 Ark. 122, 76 S.W.3d 868 (2002) (citing *Neil v. Biggers*, 409 U.S. 188, (1972)).

> In determining the reliability of an [in-court] identification, we consider the following factors: (1) the prior opportunity of the witness to observe the alleged act; (2) the accuracy of the prior description of the accused; (3) any identification of another person prior to the pretrial identification procedure; (4) the level of certainty demonstrated at the confrontation; (5) the failure of the witness to identify the defendant on a prior occasion; and (6) the lapse of time between the alleged act and the pretrial identification procedure. *E.g.*, *Van Pelt v. State*, 306 Ark. 624, 816 S.W.2d 607 (1991).

> When, as here, the photographic identification is followed by an eyewitness identification at trial, this court will not set aside the conviction unless the photographic lineup was so suggestive as to create a substantial possibility of misidentification. *E.g.*, *Fields*, 349 Ark. at 127, 76 S.W.3d at 872. It is the appellant's burden to show that a pretrial identification was suspect, and this court will not reverse a circuit judge's ruling on the reliability of an identification unless it is clearly erroneous. *Chism v. State*, 312 Ark. 559, 853 S.W.2d 255 (1993).

In *Ray*, the supreme court held that the pretrial identification procedure was not unduly suggestive, so it did not explore the issue of whether the identifications were reliable under the totality of the circumstances. *Ray*, 2009 Ark. 521, at 9, 357 S.W.3d at 879.

Smith argues that the pretrial identification procedure was unduly suggestive. Smith contends that the description was of an older white male with clean-cut hair and full-beard facial hair. He claims that three of the individuals could have been considered bald, one appeared quite young and had very little facial hair, and the remaining individual appeared to be Hispanic or Italian and had no facial hair. He maintains that no one came close to

matching the description except him. Thus, he contends that the photographic lineup presented to Colton was incredibly suggestive.

He contends that Sandusky's pretrial identification was unnecessarily suggestive because her description of the driver was that he had a square face, large head, and strawberry hair. She also stated that he was a pale white man. The photographic lineup contained only Smith's picture fitting that description. He maintains that three of the men could have been considered bald; that one of the remaining two appeared to be quite young; and the remaining individual was either Hispanic or Italian. Thus, he argues that the lineup presented to Sandusky was suggestive.

We hold that the pretrial identification procedure was not unnecessarily suggestive for either witness. The State contends, and we agree, that, contrary to Smith's argument, the people other than Smith featured in the photographic spread were similar in appearance and had comparable facial features. *See, e.g.*, *U.S. v. Granados*, 596 F.3d 970 (8th Cir. 2010) (where photo lineup was not rendered impermissibly suggestive by fact that not all individuals in six photos shown had facial hair; lineup may have been suggestive if only defendant had facial hair, or only defendant had no facial hair, but mere fact some of the men had facial hair did not indicate that lineup was suggestive); *Phillips v. State*, 327 Ark. 1, 936 S.W.2d 745 (1997) (where photo lineup was not unduly suggestive, even though rape defendant was only person wearing extremely dark shirt in photo spread; all six men in lineup were similar in appearance and had comparable facial features, there was nothing in lineup that would direct witness toward defendant as primary suspect, and there was no contention that detective

sought to influence identifications by methods she used in presenting photographs); *Bradley v. State*, 2009 Ark. App. 714, 370 S.W.3d 263 (where photo lineup was not impermissibly suggestive so as to render it inadmissible in murder prosecution, where defendant was not the only person in the lineup wearing gold teeth, and placement of defendant's photograph in the top left corner did not render it more likely to be chosen by a witness).

In the instant matter, all those in the photo spread appeared to be white males; each appeared to have some facial hair; each had at least some hair on his head; at least five appeared to be near the same age; and each appeared to have a similarly shaped head and facial features. Further, the procedure was not suggestive because the officers did not attempt to influence Colton's or Sandusky's identification of Smith when presenting the photographs. *Phillips*, *supra*. Because the pretrial identification procedure was not unduly suggestive, we do not explore the issue of whether the identifications were reliable under the totality of the circumstances. *See Ray, supra.*

Affirmed.

VIRDEN and BROWN, JJ., agree.

*James Law Firm*, by: *Lee D. Short*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Kristen C. Green*, Ass't Att'y Gen., for appellee.