

# ARKANSAS COURT OF APPEALS

DIVISION III
**No.** CR-14-742

| | |
|---|---|
| ISRAEL TODD WATSON<br>APPELLANT | **Opinion Delivered** December 16, 2015 |
| V. | APPEAL FROM THE MILLER COUNTY CIRCUIT COURT [NO. 2012-309-1] |
| STATE OF ARKANSAS<br>APPELLEE | HONORABLE JOE E. GRIFFIN, JUDGE |
| | AFFIRMED |

## RITA W. GRUBER, Judge

Appellant, Israel Todd Watson, was convicted by a jury of ten counts of rape for engaging in deviate sexual activity with a ten-year-old girl, AS.[1] All of appellant's points on appeal concern the testimony of a woman who claimed that appellant had raped her when she was a child. The court admitted the testimony over appellant's objection, finding that it fit within the pedophile exception to Arkansas Rule of Evidence 404(b). Appellant also objected to a statement in the testimony that he claimed went to "the ultimate question" in the case. We affirm appellant's convictions and hold that the trial court did not abuse its discretion in admitting the witness's testimony.

The victim in this case, AS, testified that appellant was a friend of her mother and stepfather and that they sang in a praise band together. Appellant volunteered to babysit for

---

[1]This appeal is before us for the second time after we remanded to settle and supplement the record. *Watson v. State*, 2015 Ark. App. 363.

her after school when she was in fifth grade. AS said that appellant was a "nice guy" and that she had trusted him. She called appellant "Uncle Todd." She said that he began touching her on top of her clothes and then progressed to having her perform oral sex on him. He also penetrated her vaginally with his penis and his fingers. She testified that most of the crimes took place at her house and that he had stopped when her mom had come home from work. AS also testified that he drove her to a friend's apartment on one occasion, where he retrieved condoms from a drawer and then penetrated her vaginally. He also attempted to penetrate her anally while they were at appellant's house, but AS said that he stopped when appellant's wife came home. The abuse stopped after AS told a friend at school, who informed their teacher. The teacher asked AS about it, and AS told her what had been happening.

The trial court held a pre-trial hearing to determine whether to allow the State to introduce the testimony of a twenty-four-year-old woman, Whitley Currence, who alleged that she had been raped by appellant when she was fifteen. Ms. Currence testified that she was born on April 3, 1989.[2] She testified that she and appellant worked for her mother at a nursing home in Ashdown that was owned by her mother's parents. She said that appellant had always been friendly and nice to her and that she had trusted him. One day her mother sent her and appellant to retrieve an item from a rent house that was used for storage. She stated that she did not have a driver's license and that appellant had driven. When they got to the house, he asked her whether she would tell anyone if he ever touched her. She was unsure what he meant, but told him "no." He subsequently pushed her into the corner of a

---

[2]Appellant was born on February 4, 1976.

closet, pulled her pants down, and put his penis into her vagina. She said that she had repeatedly asked him to stop. Before they left the house, appellant told her, "If you ever f★★★★★★ tell anybody . . . I'll kill you, bitch." She did not tell anyone until about six months later, when she told her father, who filed a report with the police on March 17, 2005.

The court allowed the testimony, and Ms. Currence testified similarly at trial to her pre-trial hearing. She also testified that she did not know AS or her parents and that she had not had any contact with appellant since the incident. When asked why she was testifying, she said because a detective had contacted her father and because she had three daughters and "to know that he did that to a little girl I could never sit back." Appellant objected to this statement, arguing that it was a determination on the final or ultimate question regarding whether he did or did not commit the offenses in this case. The trial court overruled the objection, reasoning that the witness was merely giving an explanation regarding why she was testifying.

## I. *404(b) Testimony*

For his first point on appeal, appellant contends that the trial court abused its discretion by allowing Ms. Currence's testimony in violation of Rule 404(b) of the Arkansas Rules of Evidence. Rule 404(b) provides as follows:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Ark. R. Evid. 404(b) (2015). The general rule excludes evidence of a defendant's prior bad acts, but the second sentence provides an exemplary, but not exhaustive, list of exceptions to

3

that rule. *Hamm v. State*, 365 Ark. 647, 652, 232 S.W.3d 463, 468 (2006) (citing *White v. State*, 290 Ark. 130, 717 S.W.2d 784 (1986)).

In case law, our supreme court has also recognized a separate pedophile exception to the general rule that evidence of a defendant's prior bad acts cannot be used to prove that the defendant committed the charged crime. *Allen v. State*, 374 Ark. 309, 316, 287 S.W.3d 579, 584 (2008). The pedophile exception allows the State to introduce evidence of the defendant's similar acts with the same or other children when it is helpful to show a proclivity for a specific act with a person or class of persons with whom the defendant has had an intimate relationship. *Craigg v. State*, 2012 Ark. 387, at 7, 424 S.W.3d 264, 268. The rationale for this exception is that such evidence helps to prove the depraved sexual instinct of the accused. *Id*. There are two requirements for this exception to apply: there must be a sufficient degree of similarity between the evidence to be introduced and the charged sexual conduct, and there must be an "intimate relationship" between the defendant and the victim of the prior act. *Allen*, 374 Ark. at 317, 287 S.W.3d at 585.

We will not reverse a trial court's decision whether to admit or reject evidence under Rule 404(b) absent a manifest abuse of discretion. *Craigg*, 2012 Ark. 387, at 8, 424 S.W.3d at 268. Abuse of discretion is a high threshold that does not simply require error in the trial judge's decision, but requires that the trial judge acted improvidently, thoughtlessly, or without due consideration. *Id*.

In challenging the court's admission of the testimony in this case, appellant first contends that it was unclear whether Ms. Currence was a minor at the time of the alleged

4

event because she gave conflicting testimony regarding whether she was fifteen or sixteen. He also argues that it was not clear that appellant was in a position of authority over Ms. Currence because it was her family who owned the nursing home. Finally, appellant claims that the only similarity between the victim in this case and Ms. Currence was that both alleged that he had raped them.

First, Ms. Currence testified that she was fifteen or sixteen at the time of the event; that she did not have a driver's license at the time; that her birthday was April 3, 1989; and that her father filed a report on March 17, 2005. There was no evidence presented that she was not a minor. Furthermore, an intimate relationship includes an acquaintance or friendship that is familiar, near, or confidential. *Craigg*, 2012 Ark. 387, at 10–11, 424 S.W.3d at 270. Ms. Currence testified that she worked with appellant, that she trusted him, and that, on the day of the incident, he was driving her on a work errand that they had been tasked with performing together by Ms. Currence's mother. She was a teenager, and he was an adult. Finally, both victims were minors, were entrusted by their mothers into his care, and were raped in homes that were unoccupied. There is nothing in the record to show that the trial court acted improvidently, thoughtlessly, or without due consideration in admitting Ms. Currence's testimony under the pedophile exception to Rule 404(b), and we hold that the trial court did not abuse its discretion.

## II. *Fifth Amendment Right*

Next, appellant contends that the trial court's decision to admit Ms. Currence's testimony compelled his testimony in violation of his Fifth Amendment right to remain silent.

Specifically, he argues that, because her testimony was of the "he said, she said" type, his only way to refute it was to testify. But he did not testify; nor has he claimed that he was compelled to provide incriminating evidence at trial. We note that testimony in a rape case is often of this type, and appellant cites no legal authority for his argument that "he said/she said" evidence violates a defendant's Fifth Amendment right. We do not consider arguments that are unsupported by convincing argument or sufficient citation to legal authority. *Armstrong v. State*, 366 Ark. 105, 109, 233 S.W.3d 627, 631 (2006).

### III. *Ultimate-Question Testimony*

Finally, appellant argues that the trial court abused its discretion in allowing Ms. Currence's testimony on what he argues was the "ultimate question." He claims that the objectionable statement amounted to the witness's opinion that appellant committed the crimes for which he was charged. The allegedly objectionable testimony occurred in response to the State's question regarding why she was "here today[.]" Ms. Currence responded, "Because I have three daughters and to know that he did that to that little girl I could never sit back[.]" Appellant objected to the testimony, arguing that it touched on the "final, ultimate determination" in the case, which was whether he raped AS. The State's response was that Ms. Currence was merely testifying regarding her understanding and not regarding the truth of the victim's allegation. Ms. Currence had earlier testified that she did not know AS or her parents, and she later testified that she had no information about this case other than that it was an alleged rape case. To support his argument, appellant cites our supreme court's opinion in *Logan v. State*, 299 Ark. 255, 773 S.W.2d 419 (1989), in which the court held that it was

error to allow an expert witness to testify that the victim was telling the truth. We do not find *Logan* persuasive in this case. The witness here was not an expert and was not asked whether she believed AS was being truthful. Moreover, she testified that she did not know AS and that she had no information about the case other than that it was an alleged rape. The trial court did not abuse its discretion in allowing this testimony.

Affirmed.

HIXSON and BROWN, JJ., agree.

*The Law Office of Darrell F. Brown, Jr.*, by: *Darrell F. Brown, Jr.*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Vada Berger*, Ass't Att'y Gen., for appellee.