

# ARKANSAS COURT OF APPEALS

DIVISION I
**No.** CR-16-620

| | | |
|---|---|---|
| DAMEION WILLIAMS | | **Opinion Delivered:** March 29, 2017 |
| | APPELLANT | |
| | | APPEAL FROM THE POPE COUNTY |
| V. | | CIRCUIT COURT |
| | | [NO. 58CR-14-432] |
| STATE OF ARKANSAS | | |
| | APPELLEE | HONORABLE WILLIAM M. PEARSON, JUDGE |
| | | |
| | | AFFIRMED |

## WAYMOND M. BROWN, Judge

Appellant appeals from his conviction by jury trial of aggravated robbery, attempted murder in the first degree, and battery in the first degree. On appeal, he argues that the circuit court erred in denying his motions (1) to suppress, (2) to require his codefendant to testify at his trial, and (3) to give a jury instruction allowing jurors to make a negative inference due to a missing video. We affirm.

On October 23, 2014, appellant was charged by information with aggravated robbery, attempted murder in the first degree, and battery in the first degree for events that occurred on October 22, 2014. On June 29, 2015, appellant filed a motion to suppress the photo lineup evidence, asserting that because the victim was shown only one photo before offering an identification, her out-of-court identification violated the United States and Arkansas Constitutions, specifically, the Fifth, Sixth, and Fourteenth Amendments to the

United States Constitution.[1] On December 3, 2015, appellant filed a motion to sever his trial from that of his then-codefendant Zach Stokes, who was facing the same criminal charges, and who appellant asserted knew the true identity of the perpetrator of the crime, but "intended not to testify as a co-defendant." On December 7, 2015, appellant filed a motion for disclosure of any favorable evidence in the possession, custody, or control of appellee. The circuit court entered an order on December 7, 2015, granting appellant's motion for severance.

A jury trial on the matter was held on December 7, 8, and 9, 2015. Prior to the start of trial, the circuit court addressed still pending matters, including appellant's motion to suppress the victim's out-of-court identification of him, appellant's subpoena of Stokes,[2] and appellant's proposed jury instruction that a missing video may be given a negative inference. Regarding testimony of Stokes, appellant argued that Stokes should be required to testify because his intended line of questioning—whether Stokes had any "contact or dealings" with appellant on October 22, 2014—did not violate Stokes's Fifth Amendment right against self-incrimination. Regarding the jury instruction, appellant argued that the missing video was "best evidence"—despite a copy thereof not existing—and so the jury should be told it could make a negative inference from the absence of the video. The circuit court denied appellant's motion to require Stokes to testify, and denied his jury instruction

---

[1]Appellant did not identify any specific amendments or other provisions of the Arkansas Constitution that were allegedly violated by the denial of his motion to suppress.

[2]Stokes's counsel appeared and asserted that his client did not intend to testify, pursuant to his Fifth Amendment right; asserted that his client would not "give a statement regarding any circumstances, whether the moment in question or the day in question or the relationship to the parties or anything"; and denied "proper issuance" of a subpoena.

motion, but stated that it would "re-visit [the jury-instruction issue] again, but [it has] got to hear some proof." However, noting that appellant had failed to seek a ruling or hearing on the matter until the day of trial despite knowing the motion was outstanding when he took the case,[3] the circuit court immediately held a hearing on the motion to suppress; the testimony was as follows.

Detective Steve Barker, of the Russellville Police Department, testified that he was called out on a case involving a shooting on October 22, 2014. He made contact with the victim at the emergency room of the local hospital. She was "seriously injured from a gunshot wound." She identified her assailants as Zach Stokes and "Demo"; she "just kept saying Zach and Demo shot me." She did not know the full name of the second man or "anything other than Demo." The victim said she "knew [Stokes and Demo] from the neighborhood." Detective Barker, being "familiar with Demo" and the "street name [Demo]" through his work on different calls and cases while working with the drug task force, "knew Demo was Dameion Williams." So, on the next day, he took a single photograph of appellant to the victim and "asked her if that was who she meant when she said Demo." He knew the photo of appellant was "Demo" but he "wanted to make sure that Demo was Dameion Williams. That the Demo [he] knew was the Demo that she knew." The victim identified the appellant as "Demo" from the single photograph. Regarding his process of obtaining an identification, Detective Barker stated:

> If the suspect is named, I have shown them a single photo just to confirm that is who they are. If they say, "John Brown" and I think I know who the John Brown they are talking about [is], I will show them a photo of John Brown to see if it is the same

---

[3]Appellant was previously represented by different counsel.

John Brown. Now if they just give me a description of a suspect, then of course I would need to do the fixed photo lineup.

Appellant testified on his own behalf. He denied any interactions with Detective Barker, admitted seeing the victim "around the hood every day" though he "[did] not hang out with her[,]" and stated that he knew Stokes. Specifically, he denied having "any face to face interaction" with the victim though he saw her when he was visiting her "next door" neighbor. He stated that he was being "mistaken for somebody else, Delow."

At the conclusion of appellant's testimony, the circuit court denied appellant's motion to suppress. It specifically stated that

> there was no suggestion in the sense that the officer put the idea of the identification in Ms. Brown's head. She had already identified her assailant prior to the officer interviewing her. He was confirming whether this was the same Demo he knew in providing a photograph, and he confirmed that.

A jury trial was held, at the conclusion of which appellant was found guilty of aggravated robbery, attempted murder in the first degree, and battery in the first degree. He was concurrently sentenced on all three charges to 420 months' imprisonment. This timely appeal followed.

## I. *Motion to Dismiss*

The trial court's ruling on the admissibility of an identification will not be reversed unless, based on the totality of the circumstances, it is found to be clearly erroneous.[4] It is appellant's burden to show that a pretrial identification was suspect.[5] When, as here, the

---

[4]*Boyd v. State*, 2016 Ark. App. 407, at 13, 500 S.W.3d 772, 780 (citing *Dixon v. State*, 310 Ark. 460, 839 S.W.2d 173 (1992)).

[5]*Fields v. State*, 349 Ark. 122, 127, 76 S.W.3d 868, 872 (2002) (citing *Dixon v. State*, 310 Ark. 460, 839 S.W.2d 173 (1992)).

photographic identification is followed by an eyewitness identification at trial, this court will

not set aside the conviction unless the photographic lineup was so suggestive as to create a

substantial possibility of misidentification.[6]

The trial court first looks at whether the pretrial identification procedure was

unnecessarily suggestive.[7] An identification procedure violates due process when suggestive

elements make it all but inevitable that one person will be identified as the criminal.[8] But,

even when the process is suggestive, the circuit judge may determine that under the totality

of the circumstances, the identification was sufficiently reliable for the matter to be decided

by the jury.[9]

Reliability is the linchpin in determining the admissibility of identification

testimony.[10] In determining the reliability of an [in-court] identification, we consider the

following factors: (1) the prior opportunity of the witness to observe the alleged act; (2) the

accuracy of the prior description of the accused; (3) any identification of another person

prior to the pretrial identification procedure; (4) the level of certainty demonstrated at the

confrontation; (5) the failure of the witness to identify the defendant on a prior occasion;

---

[6]*Id.* (citing *Goins v. State*, 318 Ark. 689, 890 S.W.2d 602 (1995)).

[7]*Id.*

[8]*Id.* (citing *Bishop v. State*, 310 Ark. 479, 839 S.W.2d 6 (1992)).

[9]*Smith v. State*, 2015 Ark. App. 418, at 7, 467 S.W.3d 750, 754 (citing *Ray v. State*, 2009 Ark. 521, at 7–8, 357 S.W.3d 872, 879 (internal citations omitted)).

[10]*Boyd*, 2016 Ark. App. 407, at 13, 500 S.W.3d at 781 (citing *Williams v. State*, 2014 Ark. 253, 435 S.W.3d 483).

and (6) the lapse of time between the alleged act and the pretrial identification procedure.[11] It is for the trial court to determine if there are sufficient aspects of reliability present in an identification to permit its use as evidence.[12] It is then for the jury to decide what weight that identification testimony should be given.[13]

In his argument that his motion to suppress the out-of-court identification should have been granted, appellant argues that identification was not sufficiently reliable. We do not agree. The circuit court first had to determine that the out-of-court identification was suggestive. We agree with the circuit court that appellant failed to prove that the identification was unduly suggestive where Detective Barker simply showed the victim a photo, based on his own knowledge of a person he knew as "Demo" and asked if the person pictured was "Demo."

Even if it can be said that the procedure was suggestive, the victim testified at trial that she had known appellant "for a while[,]" noting that "[her] auntie married [appellant's] uncle"; and that she saw appellant when he visited her neighbor. She also testified that when she identified Stokes's voice after he and appellant initially approached her car demanding her belongings, both he and appellant raised the masks they had being wearing "half way up their head." She also testified that she had an accident while fleeing from the scene and told Officer Alan Bradley, of the Russellville Police Department, that "Zach Stokes and Demo just shot me" and Officer Bradley testified confirming as much. When a witness

---

[11] *Smith*, *supra*.

[12] *Id*.

[13] *Id*.

makes a positive identification of a suspect, any challenge to the reliability of the identification becomes a matter of credibility for the fact-finder to determine.[14] We cannot find that the circuit court erred in denying appellant's motion to suppress.

## II. *Codefendant Testimony*

For appellant's second argument, he asserts that the circuit court erred in denying his motion to require his codefendant to testify at his trial. He specifically argues that while it is established that neither party is permitted to call a witness knowing that the witness will claim the Fifth Amendment testimonial privilege, Stokes should have been required to testify because appellant's limited questioning would not have violated Stokes's Fifth Amendment rights. Appellant cites no legal authority for his argument. We do not consider arguments that are unsupported by convincing argument or sufficient citation to legal authority.[15]

## III. *Jury Instruction*

Appellant's final argument is that the circuit court erred in denying his motion to give a jury instruction allowing jurors to make a negative inference due to a missing video. When this issue was raised below, the circuit court eventually stated that it would "just wait and see what the proof is[.]" It stated that it would "revisit [the issue] again." Appellant never raised the issue again and therefore, no ruling on the issue was ever made. An appellant

---

[14]*Mason v. State*, 2013 Ark. 492, at 4, 430 S.W.3d 759, 763 (citing *Stipes v. State*, 315 Ark. 719, 721, 870 S.W.2d 388, 389 (1994)).

[15]*Watson v. State*, 2015 Ark. App. 721, at 6, 478 S.W.3d 286, 289–90 (citing *Armstrong v. State*, 366 Ark. 105, 109, 233 S.W.3d 627, 631 (2006)).

must obtain a ruling on his or her argument to preserve the matter on appeal.[16] Furthermore, it is well established that one requesting a jury instruction must prepare and submit to the court a correct instruction, and where he fails to do so, he is in no position to argue on appeal that the request should have been granted.[17] The failure to proffer or abstract the proposed instruction precludes this court from considering the issue on appeal.[18] Appellant never obtained a ruling on this jury instruction issue and failed to proffer the jury instruction, therefore, this court is precluded from hearing this argument.

IV.  *Conclusion*

Because we find no error as asserted by appellant and appellant does not challenge the sufficiency of the evidence, we affirm.

Affirmed.

GLOVER and HIXSON, JJ., agree.

*Theodis N. Thompson, Jr.*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Brooke Jackson Gasaway*, Ass't Att'y Gen., for appellee.

---

[16]*Vaughn v. State*, 2015 Ark. App. 136, at 6, 456 S.W.3d 767, 771 (citing *Raymond v. State*, 354 Ark. 157, 118 S.W.3d 567 (2003).

[17]*Merritt v. State*, 82 Ark. App. 351, 354, 107 S.W.3d 894, 896 (2003) (citing *Howard v. State*, 20 Ark. App. 98, 724 S.W.2d 193 (1987)).

[18]*Dixon v. State*, 327 Ark. 105, 112, 937 S.W.2d 642, 646 (1997) (citing *Plotts v. State*, 297 Ark. 66, 759 S.W.2d 793 (1988); *Shockley v. State*, 282 Ark. 281, 668 S.W.2d 22 (1984); *Orsini v. State*, 281 Ark. 348, 665 S.W.2d 245 (1984)).