Cite as 2019 Ark. App. 418

# ARKANSAS COURT OF APPEALS

DIVISION I

**No.** CR–18–673

| | |
|---|---|
| | **Opinion Delivered:** September 25, 2019 |
| CORTEZ LAMONT GOULD | APPEAL FROM THE FAULKNER |
| APPELLANT | COUNTY CIRCUIT COURT |
| | [NO. 23CR-12-961] |
| V. | |
| | HONORABLE CHARLES E. |
| | CLAWSON, JR., JUDGE |
| STATE OF ARKANSAS | |
| APPELLEE | AFFIRMED |

## KENNETH S. HIXSON, Judge

Appellant Cortez Gould appeals after the Faulkner County Circuit Court entered an order denying his petition for postconviction relief filed pursuant to Arkansas Rule of Criminal Procedure 37. Gould raises four points on appeal claiming ineffective assistance by his trial counsel. We affirm.

Gould was convicted by a jury of aggravated robbery and theft of property, with sentence enhancements for using a firearm in the commission of the offenses. Gould was sentenced to forty years in prison. Gould appealed from his convictions, arguing that the trial court erred in denying his motion for mistrial due to alleged juror misconduct. We affirmed his convictions in *Gould v. State*, 2016 Ark. App. 124, 484 S.W.3d 678, and our mandate was issued on March 15, 2016.

Gould filed in the trial court a pro se petition for postconviction relief under Rule 37, claiming ineffective assistance of counsel and asking for a new trial. Gould's Rule 37

petition was file-marked on May 25, 2016, which was seventy-one days after our mandate issued.[1] After a hearing, the trial court entered an order denying Rule 37 relief on April 19, 2018. Gould appealed from the trial court's April 19, 2018 order.

After Gould filed his brief in this appeal, but before the case was submitted, the State filed a motion to dismiss Gould's appeal. In its motion, the State argued that Gould's Rule 37 petition was untimely filed in the trial court, and that there was a lack of compliance with the prison mailbox rule. The State's motion to dismiss was passed until submission of the case.

The case was submitted, and in *Gould v. State*, 2019 Ark. App. 333, we remanded to supplement the record with the postmarked envelope in which Gould mailed his petition from his confinement in a correctional facility. Arkansas Rule of Criminal Procedure 37.2(g), which is sometimes referred to as the prison mailbox rule, provides that "[t]he envelope in which the petition is mailed to the circuit clerk shall be retained by the circuit clerk and included in the record of any appeal of the petition." In remanding to supplement the record, we concluded that the postmarked envelope, which was not contained in the original record lodged with our clerk, was necessary for our review of whether Gould's petition was timely filed.

The record has now been supplemented, and the postmarked envelope shows that Gould mailed his petition to the Faulkner County Circuit Clerk on May 9, 2016. Inexplicably, the petition was not file-marked by the circuit clerk until May 25, 2016.

---

[1]The trial court subsequently granted leave for Gould, through counsel, to file an amended petition.

Arkansas Rule of Criminal Procedure 37.2(c)(ii) provides that "[i]f an appeal is taken of the judgment of conviction, a petition claiming relief under this rule must be filed in the circuit court within sixty (60) days of the date the mandate is issued by the appellate court." The prison mailbox rule, Rule 37.2(g), provides that upon satisfaction of certain conditions, the petition shall be deemed filed on the date of its deposit in the facility's legal mail system. In its motion to dismiss, the State contends that Gould cannot avail himself of the mailbox rule due to technical deficiencies with the required notarized statement attached to Gould's petition.[2]

We conclude that Gould's Rule 37 petition was timely under our supreme court's reasoning in *McClinton v. State*, 2016 Ark. 461, 506 S.W.3d 227. In that case McClinton, an inmate, provided no notarized statement whatsoever with his pro se petition, so the supreme court held that he did not get the benefit of the prison mailbox rule. Nonetheless, in *McClinton*, the envelope containing the petition was postmarked September 16, 2016, which was five days before the September 21, 2016 due date under Rule 37.2(c)(ii). The petition was not filed in circuit court until September 22, 2016, which McClinton claimed was a clerical error. The supreme court found the postmark significant and stated that "under these unique facts and very limited circumstances," McClinton's Rule 37 petition should have been filed prior to the sixty-day deadline, and the supreme court remanded for the circuit clerk to file-mark McClinton's petition as of September 21, 2016.

---

[2]The State's alleged deficiencies are that Gould's certificate of mailing appears after the notary's signature, which was dated the day before the petition was placed in the mailing system, and that Gould's certificate failed to state that first-class postage was prepaid in compliance with Rule 37.2(g)(iv).

3

In this case, the sixty-day deadline for filing Gould's petition was May 16, 2016. The supplemental record conclusively shows that Gould's affidavit was made under penalty of perjury and signed pro se. Further, the sworn petition contains a certificate of service to the circuit clerk and averred that the appellant was incarcerated. In addition, the envelope was posted prepaid and contained a stamp that indicated the envelope was mailed from the ADC, Cummins Unit on May 9, 2016, well within the sixty-day period. As such, we conclude that the petition was timely filed in circuit court prior to the sixty-day deadline. *See McClinton*, *supra*. Therefore, the State's motion to dismiss is denied, and we reach the merits of Gould's appeal.

Gould was accused of committing armed robbery at a Cricket cellular store in Conway on the morning of September 7, 2012. Judy McCarthy and Lori Chambliss were working at the store when it was robbed. Both of these witnesses testified at Gould's jury trial.

Judy McCarthy testified that the man who robbed the store was wearing a cap that "was pulled down farther than most hats are." However, McCarthy stated that she could see his face when he "point blank looked at me" and said, "give me all your money." McCarthy identified Gould at trial, stating that she was "absolutely certain" he was the perpetrator.

McCarthy was shown photo lineups on September 10 and 12, 2012. She did not identify anyone from the photo lineup on September 10. However, McCarthy identified Gould as the robber when she was shown the photo lineup on September 12. Gould's photo was #3 in the lineup. A recording of this photo-lineup interview was played to the

jury. During the police interview, McCarthy first stated that she thought photo #3 was the person, and then she stated, "I want to say #4" but was not sure. Then McCarthy viewed photos #3 and #4 together, tried to picture the words "give me all your money" that were said to her by the robber, and selected #3, stating "that is the person." McCarthy signed a police form confirming her identification of Gould as the robber. During cross-examination at trial, McCarthy testified that "when I signed my name on that piece of paper I was 100% certain," that "I would never have written my name down if I wasn't 100% certain," and that "I didn't get it wrong." McCarthy was shown another photo lineup more than two years after that, and McCarthy did not select anyone from that lineup.

Lori Chambliss testified that the man who robbed the store walked "hunched over" wearing a hat pulled down low. The man came to the counter, poked Chambliss with a long cane-like stick, pointed a gun at McCarthy, and demanded that the ladies "give him all the money." According to Chambliss, McCarthy put the money in a trash bag and gave it to the perpetrator, and he told them to go to the back of the store and lie on the floor. The robber then demanded more money, which McCarthy gave him from her purse. He then exited the store with the money.

Chambliss testified that she was twice shown photo lineups in the days following the robbery. She could not positively identify the robber from either lineup, although when shown the second lineup she chose #3 and #5 and could not decide between the two. Chambliss was shown another photo lineup more than two years later and did not identify anyone from that lineup. At trial, Chambliss identified Gould as the robber, stating that his face was not covered the entire time during the robbery and that "I am 100% positive it was

him." The jury convicted Gould based on the evidence presented, and we affirmed his conviction on direct appeal.

In Gould's petition and amended petition for postconviction relief under Rule 37, he raised a myriad of claims of alleged insufficiency of his trial counsel, all of which were denied by the trial court in its April 19, 2018 order denying relief. In this appeal, Gould argues that the trial court clearly erred in not finding Gould's trial counsel deficient in the following four respects: (1) trial counsel failed to file a motion to suppress McCarthy's photo-lineup identification; (2) trial counsel failed to file a written motion *in limine* challenging Chambliss's in-court identification; (3) trial counsel failed to call Georgia Brodie and Lindsey Paxton as defense witnesses; and (4) trial counsel failed to spend adequate time with Gould in preparation for trial.

We do not reverse the denial of postconviction relief unless the trial court's findings are clearly erroneous. *Conley v. State*, 2014 Ark. 172, 433 S.W.3d 234. A finding is clearly erroneous when, although there is evidence to support it, after reviewing the entire evidence, we are left with the definite and firm conviction that a mistake has been committed. *Id*. In making a determination on a claim of ineffective assistance of counsel, this court considers the totality of the evidence. *Id*.

Our standard of review also requires that we assess the effectiveness of counsel under the two-prong standard set forth by the Supreme Court of the United States in *Strickland v. Washington*, 466 U.S. 668 (1984). *Conley*, *supra*. In asserting ineffective assistance of counsel under *Strickland*, the petitioner must first demonstrate that counsel's performance was deficient. *Sartin v. State*, 2012 Ark. 155, 400 S.W.3d 694. This requires a showing that

6

counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the petitioner by the Sixth Amendment. *Id*. The reviewing court must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Id*. The defendant claiming ineffective assistance of counsel has the burden of overcoming that presumption by identifying the acts and omissions of counsel which, when viewed from counsel's perspective at the time of trial, could not have been the result of reasonable professional judgment. *Id*.

Second, the petitioner must show that the deficient performance prejudiced the defense, which requires a demonstration that counsel's errors were so serious as to deprive the petitioner of a fair trial. *Vaughn v. State*, 2017 Ark. App. 241, 519 S.W.3d 717. This requires the petitioner to show that there is a reasonable probability that the fact-finder's decision would have been different absent counsel's errors. *Id*. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the trial. *Id*. Unless a petitioner makes both *Strickland* showings, it cannot be said that the conviction resulted from a breakdown in the adversarial process that renders the result unreliable. *Id*.

Gould first argues that the trial court erred in denying his petition because his trial counsel failed to file a motion to suppress McCarthy's photo-lineup identification of him. Gould claims that when she selected him from the photo lineup on September 12, 2012, the identification procedure was overly suggestive. Gould notes that in McCarthy's initial description of him given to the police she estimated his height at 5'6", and that a document

7

in the record listed his height at 6'0".[3]  Gould further states that McCarthy had a difficult time choosing between photo #3 and photo #4, and asserts that the police officer conducting the interview guided her toward photo #3.  Gould claims that McCarthy's level of certainty was low given that she vacillated during the second photo lineup and then failed to select anyone from a third photo lineup shown to her more than two years later.  Gould states that had trial counsel succeeded in getting McCarthy's pretrial identification suppressed, he could have also suppressed her in-court identification of him.  Gould argues that his trial counsel was deficient in failing to move to suppress McCarthy's pretrial identification, and that such deficiency undermined the outcome of the trial.

It is the defendant's burden to show that a pretrial identification is suspect.  *Chism v. State*, 312 Ark. 559, 853 S.W.2d 255 (1993).  The supreme court has held that a pretrial identification violates due process when there are suggestive elements in the identification procedure that make it all but inevitable that the victim will identify one person as the culprit.  *Ray v. State*, 2009 Ark. 521, 357 S.W.3d 872.  But even when the process is suggestive, the trial court may determine under the totality of the circumstances that the identification was sufficiently reliable for the matter to be decided by the jury.  *Id.*

In determining the reliability of a pretrial identification, the following factors are considered:  (1) the prior opportunity of the witness to observe the alleged act; (2) the accuracy of the prior description of the accused; (3) any identification of another person prior to the pretrial-identification procedure; (4) the level of certainty demonstrated at the

---

[3]Another document in the record listed Gould at 5'10".  There was testimony that Gould was "hunched over" when he walked into the store.

8

confrontation; (5) the failure of the witness to identify the defendant on a prior occasion; and (6) the lapse of time between the alleged act and the pretrial-identification procedure. *Williams v. State*, 2017 Ark. App. 198, 517 S.W.3d 446.

A petitioner does not demonstrate the requisite prejudice for a claim of ineffective assistance of counsel based on the failure to make a motion or objection if he does not establish in his petition that counsel could have made a successful motion or objection. *Lowe v. State*, 2012 Ark. 185, 423 S.W.3d 6. The trial court found that Gould's trial counsel's decision not to file a motion to suppress the pretrial identification did not place counsel outside the level of competency provided in *Strickland*, stating that any uncertainty regarding McCarthy's pretrial identification of Gould related to McCarthy's credibility and not the admissibility of the identification. On the totality of the evidence, we hold that this finding by the trial court was not clearly erroneous.

Prior to showing McCarthy the photo lineup on September 12, 2012, the police officer advised her that the photo spread may or may not contain the picture of the person who committed the crime, that she did not have to pick anyone, and that the investigation would continue regardless of whether or not she picked someone. Although McCarthy had some difficulty in deciding whether the perpetrator was person #3 or person #4 in the lineup, after viewing these photos together and closely examining them, she pointed to #3 (Gould) and said "this is the person." McCarthy again confirmed her identification by stating "that is the person." The police officer then began to ask, "Are you—," at which point McCarthy said "yes, sir." In McCarthy's testimony, she stated that she saw the robber's face when he told her to "give me all your money," and she stated that she would

not have signed the photo lineup identifying Gould as the perpetrator if she was not 100 percent certain. McCarthy's pretrial identification of Gould came just five days after the crime was committed.

At the Rule 37 hearing, Gould's trial counsel testified that he did not believe a motion to suppress McCarthy's pretrial identification would have been successful, and that he instead chose to attack McCarthy's credibility and the weight of her identification by extensively cross-examining her about her statements during the photo-lineup procedure. The record demonstrates that the photo-lineup procedure in this case did not make it all but inevitable that McCarthy would identify Gould—she did so on her own accord and confirmed that this was the man who robbed her. We conclude that the trial court did not clearly err in finding that trial counsel's decision to not move to suppress the photo-lineup identification was not deficient performance under the *Strickland* standards.

Gould's second argument is that the trial court clearly erred in not finding his trial counsel deficient for failing to file a written motion *in limine* challenging Chambliss's in-court identification of him. Gould admits that his trial counsel did, at trial, make an oral motion outside the presence of the jury to prohibit this testimony before Chambliss testified. In the oral motion, trial counsel argued that Chambliss did not make a definite identification of Gould prior to trial after being shown photo lineups, and that Chambliss should not be allowed to identify Gould as the robber for the first time at trial. The trial court denied trial counsel's oral motion, ruling that Chambliss could identify Gould in court and that Gould's trial counsel could cross-examine her about her participation in the photo lineups. Although trial counsel made an oral motion challenging Chambliss's in-court identification of Gould,

10

Gould now contends that trial counsel was deficient because he did not file a written motion *in limine* prior to trial to exclude this testimony. Gould notes that an officer's incident report reflects that Chambliss initially told the police that, when the robber walked up to the counter, he kept his face covered the entire time.[4] Gould suggests that, had a written motion *in limine* been made to exclude Chambliss's identification of him, he could have adduced testimony on the issue prior to a ruling by the trial court.

At the Rule 37 hearing, Gould's trial counsel testified that, strategically, he decided to make his motion to exclude Chambliss's identification testimony before Chambliss testified at trial so that the State had no time to prepare for it and file a written response. Trial strategy and tactics are not grounds for a finding of ineffective assistance of counsel. *Smith v. State*, 2015 Ark. 165, 459 S.W.3d 806. In the trial court's order denying relief on this issue, the trial court found:

> The second ground alleged in the petition is that counsel should have filed a motion to suppress the in-court identification of Lori Chambliss. It is noteworthy that prior to trial an oral motion was made by counsel to challenge the admissibility of her testimony. A hearing was held out of the presence of the jury, and the Court denied the motion. Her testimony was admitted. The Court determines that whether written or oral, the motion was made, it was argued, and it was ruled upon by this Court. It would be a matter of form over substance in that the issues were brought before the Court and were acted upon prior to trial. Therefore, the Court finds that there was no deviation from the standard and no prejudice.

We hold that there was no clear error in the trial court's finding that Gould's trial counsel was not deficient by electing to make an oral motion to exclude the testimony as opposed

---

[4]In her testimony Chambliss stated that the perpetrator's face was not covered during the entire robbery and that she did not recall saying this to a police officer.

to filing a written motion, as this fell within the wide range of reasonable professional assistance.

Gould's third argument is that the trial court clearly erred in not finding his trial counsel ineffective by failing to call Georgia Brodie and Lindsey Paxton as witnesses in Gould's defense. In *Wertz v. State*, 2014 Ark. 240, at 4, 434 S.W.3d 895, 900, our supreme court set forth the following standards:

> [W]ith respect to an ineffective-assistance-of-counsel claim regarding the decision of trial counsel to call a witness, such matters are generally trial strategy and outside the purview of Rule 37.1. Where a petitioner alleges ineffective assistance of counsel concerning the failure to call witnesses, it is incumbent on the petitioner to name the witness, provide a summary of the testimony, and establish that the testimony would have been admissible into evidence. In order to demonstrate prejudice, the petitioner is required to establish that there was a reasonable probability that, had counsel performed further investigation and presented the witness, the outcome of the trial would have been different. Trial counsel must use his or her best judgment to determine which witnesses will be beneficial to the client. Nonetheless, such strategic decisions must still be supported by reasonable professional judgment. Finally, when assessing an attorney's decision not to call a particular witness, it must be taken into account that the decision is largely a matter of professional judgment which experienced advocates could endlessly debate, and the fact that there was a witness or witnesses that could have offered testimony beneficial to the defense is not in itself proof of counsel's ineffectiveness.

(citations omitted). We will address Georgia Brodie and Lindsey Paxton separately.

Georgia Brodie did not testify at the Rule 37 hearing. However, the police spoke with Brodie during the investigation of the robbery. According to a written police report, Brodie was very reluctant to speak with the police but told them that she had heard from Lee Anderson that the two robbery suspects were brothers. Brodie provided no contact information on Anderson. Gould argues that his trial counsel was ineffective for not calling Brodie as a witness because she could have provided testimony about two other suspects and the possible misidentification of Gould as the perpetrator.

12

In denying relief on this point, the trial court found that had Brodie been called as a witness, her testimony about other possible suspects would have been inadmissible hearsay. In his brief, Gould makes no argument that Brodie's testimony would have been admissible under any hearsay exception. Because Gould has not established that the desired testimony would have been admissible, we find no clear error in this finding by the trial court.

Lindsey Paxton did testify at the Rule 37 hearing. Paxton, Gould's parole officer, testified that Gould had a parole visit scheduled for the day before the robbery, but called and advised her that he was in the emergency-room waiting area waiting to be seen. On the next day, September 7, 2012, which was the day the robbery occurred, Gould came in for a parole visit at around 4:00 p.m.[5] Paxton testified that she patted down Gould during the parole visit and found a large amount of cash. Gould argues that his trial counsel was ineffective for not calling Paxton to testify at trial because her testimony would have informed the jury that on the day of the robbery Gould attended a parole visit and was likely not in good health.

There were several problems with Paxton's proposed testimony. First, her testimony would have alerted jurors that Gould had at least one prior felony. Second, Paxton's testimony would have provided no alibi for Gould because she would have confirmed that Gould visited her several hours after the robbery was committed. Finally, the jurors would have known that Paxton was carrying a large amount of cash on the day of the robbery after the robbery was committed. Gould's counsel's decision to not call Paxton as a witness was

---

[5]The robbery had occurred earlier that morning.

a matter of trial strategy. We hold that there was no clear error in the trial court's finding that this was not ineffective assistance of counsel.

Gould's remaining argument is that the trial court clearly erred in not finding his trial counsel ineffective for failing to spend adequate time with Gould in preparation for trial. However, we disagree. At the Rule 37 hearing, Gould testified that his trial counsel visited him only about four times when he was in jail awaiting trial, and that often times counsel was more concerned about getting paid than preparing for trial. Gould testified that he unsuccessfully tried to get his counsel to file motions on his behalf, and that his counsel never went over discovery with him. Gould's counsel, on the other hand, testified that he spent significant time with Gould in preparation for trial and saw him at least thirty times. Gould's trial counsel indicated that he did the best he could on deciding which motions to file based on his understanding of the law, and that he proceeded with Gould's defense using his best professional judgment. We defer to the trial court's determination on matters of credibility in a postconviction appeal. *State v. Estrada*, 2013 Ark. 89, 426 S.W.3d 405. In this case, the trial court accepted Gould's trial counsel's testimony that he spent an adequate amount of time with Gould. We hold that the trial court's finding that Gould failed to demonstrate ineffective assistance in preparing for trial was not clearly erroneous.

Affirmed.

KLAPPENBACH and BROWN, JJ., agree.

*James Law Firm*, by: *Michael K. Kaiser*, *Megan M. Wilson*, and *William O. "Bill" James, Jr.*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Pamela Rumpz*, Ass't Att'y Gen., for appellee.

14